[Cite as *In re Adoption of K.N.W*, 2016-Ohio-5863.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | Case Nos. 15CA36 |
| | | 15CA37 |
| ADOPTION OF: | : | |
| | | DECISION AND |
| K.N.W. AND A.D.W. | : | JUDGMENT ENTRY |
| | : | **RELEASED 09/09/2016** |

APPEARANCES:

Beth B. Ferrier, Ferrier Law Office, LLC, Athens, Ohio, for appellant, Chad Eric Jarvis.

Zachary L. Tidaback, Mollica, Gall, Sloan & Sillery Co., LPA, Athens, Ohio, for appellee, Kenneth Waggoner.

Harsha, J.

{¶1}   Chad Eric Jarvis appeals from judgments finding that his consent to a stepparent adoption of his minor children was not required.  The trial court made that determination because it found Jarvis had failed without justifiable cause for the requisite period: (1) to provide more than de minimis contact with the children; and (2) to provide for the maintenance and support of the children as required by law or judicial decree.

{¶2}   Jarvis claims that his single support payment during the applicable one-year period was sufficient to prevent the application of the statutory exception to the requirement of his consent to the adoptions.  The modified dissolution decree required that Jarvis pay $367.20 in monthly child support for his minor children, but he made only a solitary payment of $328 in June 2015.  Jarvis did not make even one compliant payment of child support during the one-year period preceding the filing of the adoption petitions. Furthermore, that one noncompliant payment satisfied less than 7% of his

total annual obligation. Therefore, the trial court did not abuse its discretion by determining that he did not provide for the maintenance and support of the minor children as required by the law or judicial decree for that period.

{¶3}    Jarvis also contends that he had justifiable cause for his failure to pay child support because he had no reason to believe that his financial support was necessary when his ex-wife and her new husband never took steps to enforce the existing support order prior to the new husband filing the adoption petitions.  We reject Jarvis's contention because the primary cases he cites for that proposition did not involve a court order requiring child support.

{¶4}    Finally, Jarvis under his second assignment of error contends that his unemployment, drug addiction, and health issues provided justifiable cause for his failure to pay child support.   Jarvis lost his job after the dissolution of his marriage because of his drug addiction; and he conceded that he had not held a steady job since then because of his addiction.  Jarvis's termination and continued unemployment resulted from his decision to use illegal drugs, which was a voluntary act that did not justify modification of his child-support obligations, and thus did not provide a justifiable excuse for his failure to pay them.  Moreover, he admitted that he had made money with a few side jobs since the dissolution, but had not used any of that money to pay child support.  Additionally, his excuse of hurting his knee in June 2015 would not have prevented him from providing child support in the period before his injury.  Because the trial court did not clearly lose its way in determining that the evidence established that Jarvis did not have a justifiable cause for failing to provide for the maintenance and

support of his children as required by the law and judicial decree its decision is not against the manifest weight of the evidence.

{¶5}    This decision renders moot Jarvis's argument in his first assignment of error that the trial court erred when it found that his consent to the adoptions was also not required because he did not have more than de minimis contact with the children in the requisite one-year period. In other words, either finding was sufficient to void the consent requirement.

{¶6}    Finally, in his third assignment of error Jarvis claims that the trial court erred by failing to recognize that the stepfather had the burden of proving by clear and convincing evidence that Jarvis failed without justifiable cause to provide more than de minimis contact with the minor children or to provide for the maintenance and support of the minor children.  We reject Jarvis's claim because there is nothing in the trial court's judgments or the record that contradicts the presumption of regularity accorded all judicial proceedings.

{¶7}    We affirm the judgments of the trial court.

I. FACTS

{¶8}    Chad Eric Jarvis and Lucinda Waggoner are the biological parents of two minor children, K.N.W. and A.D.W.  After the dissolution of marriage, Lucinda married Kenneth Waggoner.

{¶9}    In August 2015, Kenneth filed petitions in the Athens County Court of Common Pleas, Probate Division to adopt K.N.W. and A.D.W. Kenneth attached Lucinda's written consent to the adoptions. Kenneth alleged that Jarvis's consent to the adoptions was not required because Jarvis had failed without justifiable cause for a

period of at least one year immediately preceding the filing of the petitions: (1) to provide more than de minimis contact with the children; and (2) to provide for the maintenance and support of the children as required by law or judicial decree.

{¶10} Jarvis filed objections to Kenneth's petitions, which asserted that his consent to the adoptions was required and that he did not consent to them. The probate court held a hearing, which provided the following evidence.

{¶11} Jarvis and Lucinda were married in 2005 and had two children, K.N.W., who was born in 2003, and A.D.W., who was born in 2006. In 2009, the Athens County Common Pleas Court, Domestic Relations Division issued a decree of dissolution incorporating the parties' separation agreement. Under the decree the court named Lucinda the primary residential parent and legal custodian of their children and ordered Jarvis to pay child support in the amount of $300, plus poundage. The parties' agreement included the following condition on Jarvis's visitation rights:

> Husband shall have random drug screens, performed by Wife, and agrees to not see the children if the results are positive for any drugs. Husband shall not have any drugs or drug paraphernalia in his possession (in his house or in his car) while he has the children in his care, and shall not take the children to places where he has knowledge that drugs will be present or around people that will have drugs about their person.

{¶12} Lucinda testified that the provision was included in the parties' separation agreement because of Jarvis's history of drug abuse during their marriage, including his abuse of oxycodone, hydrocodone, methadone, and marijuana. This included Jarvis purchasing illegal drugs and snorting them. According to Jarvis's testimony, Lucinda, a registered nurse, had conducted 40 to 50 drug tests on him while they were married. Although Jarvis testified that he did not understand the provision because he was not

represented by counsel when he executed the separation agreement and agreed to the dissolution, he conceded that he signed the dissolution documents and that it was his responsibility to read the pertinent agreement and other materials.

{¶13}  In February 2013, when K.N.W. was visiting Jarvis, who was living with his parents, she saw syringes in his dresser drawer and told her mother, Lucinda. For the next visitation Lucinda advised Jarvis's mother, Diana, that in accordance with the dissolution decree, she would require Jarvis to take and pass a drug test before she would allow him to have visitation with the children. Jarvis refused to take a drug test and did not have visitation with his children thereafter. According to Lucinda, Jarvis's mother texted her that she understood why she wouldn't let Jarvis see the children because "he's very deep into drugs right now." According to Lucinda if Jarvis had come to her and agreed to take a drug test and if he had passed it, she would have allowed him to visit the children in accordance with the dissolution decree. In fact, Lucinda had let Jarvis's parents see the children as long as he was not around.

{¶14}  Lucinda married Kenneth in 2012, and the children live with them. Lucinda testified that in the year preceding Kenneth's August 2015 filing of his stepparent adoption petitions, Jarvis's only contact with his children was:  (1) to call them in December 2014 to wish them a merry Christmas, when the children both said they did not want to talk with him; and (2) when he left a voicemail in April 2015 saying that he had heard that K.N.W. was in the hospital and wanted to know how she was. According to Lucinda, Jarvis did not send any cards or gifts to the children during that period. Conversely, Jarvis testified that he tried to contact his children at least once or

twice a month, but he would either never get an answer or Lucinda would just tell him that the children did not want to speak with him.

**{¶15}** According to Jarvis he lost his job with a construction company within a couple weeks after the dissolution of his marriage to Lucinda in November 2009 because he was "ratted on for supposedly having marijuana." Jarvis received unemployment compensation for a couple years thereafter, and his child support payments were taken out of his benefits during this period. According to Jarvis his main source of income since his unemployment compensation ended was his parents, with whom he lived. Nevertheless, he further testified that he had engaged in a few side jobs since 2009, but conceded that he did not use any of the proceeds to pay his child-support obligation.

**{¶16}** During the one-year period preceding Kenneth's August 2015 filing of his adoption petitions, the amount of monthly child support that Jarvis owed was $367.20, which represented the original decree amount of $300, $60 added to cover delinquent arrearages, and $7.20 in poundage. In that period Jarvis made only a single payment of $300, i.e., less than the monthly amount due, in June 2015. In addition the IRS collected $28 involuntarily from Jarvis and paid that as part of the child support payment that same month, for a total payment of $328. Jarvis testified that he got the money for his $300 payment by taking money given to him by his parents and playing cards.

**{¶17}** On cross-examination Jarvis testified that he had not held a steady job since his construction job in 2009 because of his addiction to drugs.  He claimed that he was unable to work and pay child support because he "blew out" his knee, which required surgery, landscaping his parents' property. However, he later admitted that this

occurred in June 2015, so his inability to work for most of the year preceding the adoption petitions was because of his drug addiction. Jarvis's mother confirmed that the reason that he did not work was because of his addiction to drugs.

**{¶18}** Finally, Jarvis testified that he was facing seven felony charges for burglary and theft for a January 2015 arrest that he had taken and passed several court-ordered drug tests since then.

**{¶19}** In November 2015, the trial court issued decisions in both adoption cases concluding that Jarvis's consent was not required because he:  (1) "has not had more than de minimis contact from August 3, 2014 through August 3, 2015 and by law his consent is not required in this matter"; and (2) has failed to provide maintenance and support of the minor children for a period of at least one year immediately preceding the filing of the petition. On its first finding, the trial court at one point stated inconsistently that "[t]here is not any dispute that [Jarvis] has had more than de minimis contact during the statutory period," but concluded otherwise on the next page after finding that Jarvis's "only contact has occurred twice during these visits [of the children with his parents], but constituted no more than monetary [sic] passings." On its second finding, the trial court concluded that Jarvis's solitary payment of $328, which consisted of his $300 voluntary payment and an additional $28 collected involuntarily through tax recapture, "does not represent support and [Jarvis's] consent is not required."  These consolidated appeals followed.[1]

II. ASSIGNMENTS OF ERROR

---

[1] "A trial court's finding pursuant to R.C. 3107.07 that the consent to an adoption of a party described in R.C. 3107.06 is not required is a final appealable order." *In re Adoption of Greer*, 70 Ohio St.3d 293, 638 N.E.2d 999 (1994), syllabus.

**{¶20}** Jarvis assigns the following errors for our review:

1. THE PROBATE COURT'S FINDING THAT THE CONSENT OF APPELLANT TO THE ADOPTIONS WAS NOT REQUIRED BECAUSE THE APPELLANT DID NOT HAVE MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILDREN FOR AT LEAST ONE YEAR IMMEDIATELY PRECEDING THE FILING OF THE ADOPTION PETITIONS IS AGAINST THE WEIGHT OF THE EVIDENCE.

2. THE PROBATE COURT'S FINDING THAT APPELLANT'S CONSENT TO THE ADOPTIONS WAS NOT REQUIRED BECAUSE THE PAYMENT OF SUPPORT THAT APPELLANT MADE IN THE ONE YEAR IMMEDIATELY PRECEDING THE FILING OF THE ADOPTION PETITIONS DID NOT REPRESENT SUPPORT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

3. THE PROBATE COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FAILING TO RECOGNIZE THAT APPELLEE HAD THE BURDEN OF PROVING BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILDREN OR TO PROVIDE FOR THE MAINTENANCE AND SUPPORT OF THE MINOR CHILDREN AS REQUIRED BY LAW OR JUDICIAL DECREE.

### III. GENERAL PRINCIPLES AND STANDARD OF REVIEW

**{¶21}** " '[N]atural parents have a fundamental liberty interest in the care, custody, and management of their children.' " *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 16, quoting *In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16. This is a constitutionally protected interest. *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E,2d 302, ¶ 11.

**{¶22}** Because adoption terminates these fundamental constitutional rights of the natural parents, any exception to the requirement of parental consent to adoption must be strictly construed to protect the right of natural parents to raise and nurture their

children.  *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 336, ¶ 6.

**{¶23}**  Consistent with the recognition of these rights, R.C. 3107.06 generally requires the written consent of the natural parents of the minor children who are the subject of petitions to adopt. However, consent is not required under R.C. 3107.07, which includes the following exceptions to the general rule requiring a natural parent's consent:

> Consent to adoption is not required of any of the following:
>
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶24}**  "Pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that the failure was without justifiable cause."  *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph one of the syllabus.

**{¶25}**  The Supreme Court of Ohio recently clarified that "[a] probate court determination of whether a financial contribution constitutes maintenance and support for purposes of R.C. 3107.07(A) is reviewed for an abuse of discretion; but whether justifiable cause for the failure to pay child support has been proved by clear and convincing evidence is a separate question for the probate court and will not be disturbed on appeal unless it is against the manifest weight of the evidence."  *In re*

*Adoption of M.B.*, 131 OhioSt.3d 186, 2012-Ohio-236, 963 N.E.2d 142, paragraph two of the syllabus.

**{¶26}** An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.*, __ Ohio St.3d __, 2016-Ohio-3100, __ N.E.3d __, ¶ 22.

**{¶27}** "[W]hen an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." *See Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 68 (4th Dist.), citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 25; *Pinkerton v. Salyers*, 4th Dist. Ross No. 13CA3388, 2015-Ohio-377, ¶ 18, citing *In re M.M.*, 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 22 (applying this standard in a case that involved a burden of proof of clear and convincing evidence). We presume that the trial court's findings are accurate and will reverse a judgment as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the judgment. *Martin* at ¶ 68.

IV. LAW AND ANALYSIS

A. Consent Not Required:  Failure to Provide Maintenance

and Support as Required by Law or Judicial Decree

**{¶28}** For ease of analysis we first consider Jarvis's second assignment of error. Jarvis initially asserts that the trial court's finding that his consent to the adoptions was

not required because his child-support payment in June 2015 was insufficient is against

the manifest weight of the evidence.  Under the applicable standard of review, however,

his first claim is reviewed under the abuse-of-discretion standard rather than a manifest-

weight standard.  *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963

N.E.2d 142, at paragraph two of the syllabus.

**{¶29}**  During the pertinent one-year period preceding the stepfather's filing of his

adoption petitions, the maintenance and support of the minor children as required by

judicial decree was represented by Jarvis's monthly child-support obligation of $367.20,

which included the original dissolution amount, an amount to cover the arrearage, and

the poundage.  His voluntary payment of $300 in June, even when combined with the

involuntary IRS recapture of $28, was insufficient to constitute even one sufficient

monthly child-support payment.  Jarvis cites no specific case or authority that his

solitary partial payment of support was sufficient to require his consent to the proposed

adoptions.

**{¶30}**  Similarly, in *M.B.*,[2] the Supreme Court of Ohio held that gifts that

represented "only a small portion of one monthly child-support obligation and an even

---

[2]  In *M.B.* at ¶ 25, the Supreme Court of Ohio represented that it was answering the question posed by Justice Douglas in his concurring opinion in *Bovett*, 33 Ohio St.3d at 107, 515 N.E.2d 919 (Douglas, J., concurring):

> Today, we answer the question raised by Justice Douglas in his concurring opinion in *Bovett*—whether a parent's making a single payment of support or sending a Christmas card is sufficient support to frustrate R.C. 3107.07(A), or on the other end of the spectrum, whether a parent's missing one or two payments of support in the year preceding the filing of an adoption petition negates the need for parental consent to adoption.  A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision regarding whether a financial contribution from a parent constitutes maintenance and support for purposes of R.C. 3107.07(A).

smaller portion of the annual obligation" did not constitute sufficient maintenance and support. Although it is true here that Jarvis's single payment represented most of one monthly child-support payment, as modified by the arrearage and poundage amounts, as in *M.B.*, it still did not satisfy the full monthly payment obligation. And it was less than 7% of his annual child-support obligation. Under these circumstances we cannot say that the trial court acted in an unreasonable, arbitrary, or unconscionable manner in determining that his solitary noncompliant support payment did not constitute sufficient maintenance and support of the minor children as required by a judicial decree during the requisite one-year period.

**{¶31}** Next Jarvis contends that the trial court's implicit determination that he lacked justifiable cause for his failure to pay child support for the applicable period is against the manifest weight of the evidence. He claims that he had no reason to believe that his support was necessary when Lucinda and her new husband never took any steps to enforce the existing support order prior to the filing of the adoption petitions.

**{¶32}** "As we have noted in previous decisions, the word 'justifiable' means '[c]apable of being legally or morally justified; excusable; defensible.' " *In re Adoption of B.B.S.*, 2016-Ohio-3515, __ N.E.3d __, ¶ 16 (4th Dist.), quoting *Black's Law Dictionary* 882 (8th Ed.2004). "Some facially justifiable reasons for failure to support one's child are: (1) unemployment and a lack of income, and (2) the custodian, who is in a better financial position than the natural parent, adequately provides for a child's needs and expresses no interest in receiving any financial assistance." *In re Adoption of B.B.S.* at

---

In truth, however, the Supreme Court did not definitively answer the question of whether a parent's making of a single payment of support in the one-year period is sufficient to require the parent's consent to adoption. Instead, it merely stated that this decision was within the trial court's discretion.

¶ 16, citing *In re Adoption of Hughes*, 4th Dist. Ross No. 07CA2947, 2007-Ohio-3710, ¶ 20-21.

**{¶33}** Jarvis relies primarily on the second example noted above, as addressed in *In re Adoption of Hadley*, 2d Dist. Greene No. 90 CA 117, 1991 WL 227737, *3 (May 6, 1991) ("where, as here, the parent has no reason to believe that his or her financial assistance is necessary for the support of the child, and the persons caring for the child have expressed no interest in receiving any financial assistance or contribution from the parent, no such abdication of parental responsibility is suggested by the natural parent's failure to provide financial assistance that is neither needed nor requested").

**{¶34}** We reject Jarvis's contention because cases like *Hadley* and *Hughes* are cases in which there is no child-support order. Here, the parties agreed to and the domestic relations court issued a child-support order. These cases are thus not controlling. *See, e.g., In re Adoption of LaFave*, 2d Dist. Montgomery No. 17697, 1999 WL 959148, *4 (Aug. 13, 1999) (the same court that issued the decision in *Hadley* held that the case was "distinguishable from *Hadley* in that there petitioner never asked for financial assistance from the natural parent and no court order had ever been issued against the natural parent requiring support").

**{¶35}** Jarvis finally contends under his second assignment of error that his unemployment, drug addiction, and health issues provided justifiable cause for his failure to comply with his child-support obligation in the requisite period. Jarvis admitted that he lost his job after the dissolution of his marriage because of his drug addiction, and he further conceded that he had not held a steady job since then because of his addiction.

**{¶36}** Consistent with our recent precedent, Jarvis's termination from employment and continued unemployment are results of his decision to use illegal drugs, a voluntary act that did not justify modification of his child-support obligations and thus did not provide a justifiable cause for his failure to pay them. *In re Adoption of J.A.C.*, 4th Dist. Scioto No. 14CA3654, 2015-Ohio-1662, ¶ 18, citing *Fuller v. Fuller*, 4th Dist. Lawrence No. 99CA4, 2000 WL 807224 (June 14, 2000) ("The probate court noted that David's termination as a result of his decision to use illegal drugs was a voluntary act that did not justify modification of David's child support obligations and thus, did not provide a justifiable excuse for his failure to pay them"). Drug addiction alone is not a justifiable cause for failure to provide support. *In re Adoption of Lassiter*, 101 Ohio App.3d 367, 378, 655 N.E.2d 781 (2d Dist.1995), discretionary appeal not allowed, 73 Ohio St.3d 1410, 651 N.E.2d 1308 (1995) (drug addiction does not relieve one of one's responsibility towards family and society; a drug addict has funds sufficient to support his drug habit and thus should have funds sufficient to pay support).

**{¶37}** In fact Jarvis testified that when he was ordered by a court to pass drug tests as a condition of his pending felony case, he did so. This indicates that Jarvis had some control over his ability to stay "clean" and to obtain employment to comply with his child-support obligation.

**{¶38}** Moreover, Jarvis admitted that he had made money with a few side jobs since the dissolution of his marriage, but he had not used any of that money to comply with his child-support obligation.

{¶39} Finally, Jarvis's purported health issues involving his injured knee occurred in June 2015, which did not prevent him from obtaining employment and providing child support in the period preceding the injury.

{¶40} After weighing the evidence and all reasonable inferences and considering the credibility of witnesses, we are not persuaded that the trial court clearly lost its way and created such a manifest miscarriage of justice that we must reverse its judgments. The trial court's conclusion that Jarvis's consent was not required because of his failure without justifiable cause to provide maintenance and support for the minor children during the applicable period is not against the manifest weight of the evidence. We overrule Jarvis's second assignment of error.

B. Consent Not Required:  Failure to Provide More

than De Minimis Contact

{¶41} In his first assignment of error Jarvis argues that the trial court's finding that his consent to the adoptions was not required because he did not have more than de minimis contact with the minor children during the requisite one-year period is against the manifest weight of the evidence. Because we have already upheld the trial court's finding that Jarvis's consent was not required because of his failure without justifiable cause to provide for the maintenance and support of his children, this alternative contention is rendered moot and we need not address it. *In the Matter of the Adoption of M.C.,* 4th Dist. Jackson Nos. 11CA5 and 11CA6, 2011-Ohio-6527, ¶ 24; App.R. 12(A)(1)(c). In other words the statute speaks in the alternative.

C. Legal Standard

{¶42} In his third assignment of error Jarvis asserts that the trial court erred by failing to recognize that Kenneth, the stepfather, had the burden of proving by clear and convincing evidence that he failed without justifiable cause to provide more than de minimis contact with the minor children or to provide for the maintenance and support of the minor children as required by a judicial decree.

{¶43} Jarvis is correct that the trial court's judgments did not specify the clear-and-convincing burden of proof borne by the adoption petitioner. *See Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph one of the syllabus; R.C. 3107.07(A).

{¶44} Nevertheless, "[a] presumption of regularity attaches to all judicial proceedings." *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19. Consequently, an appellate court presumes that a trial court applied the correct legal standard absent an affirmative demonstration otherwise. *See, generally, Phillips v. Phillips*, 2014-Ohio-5439, 25 N.E.3d 371, ¶ 27 (5th Dist.); *McGuire v. McGuire*, 4th Dist. Gallia No. 90 CA 23, 1991 WL 122857, *4 (July 3, 1991). This general presumption of regularity also applies to the trial court's application of the correct burden of proof. *See State v. Jordan*, 2d Dist. Montgomery No. 13-TRD-2244, 2014-Ohio-1661, ¶ 2 ("it is presumed that a trial court, as the finder of fact, has applied the correct burden of proof, and it is the appellant's burden to demonstrate, by reference to the record of the proceedings, that the presumption is overcome"). Jarvis has failed to meet his burden of overcoming the presumption that the trial court applied the correct standard of proof in the adoption proceedings. The record supports the trial court's judgment that the stepfather had met his burden of establishing that Jarvis's consent to the adoptions was not required. We overrule Jarvis's third assignment of error.

## V. CONCLUSION

**{¶45}** Having overruled Jarvis's second and third assignments of error, we affirm the judgments of the trial court determining that Jarvis's consent was not required to the proposed stepparent adoptions of the minor children.  Our holding renders his first assignment of error moot.

JUDGMENTS AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENTS ARE AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Probate Division to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concur in Judgment and Opinion.
McFarland, J.: Concur in Judgment Only.

For the Court

BY: _____
       William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**