[Cite as *In re L.C.W.*, 2015-Ohio-61.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF
THE ADOPTION OF:

L.C.W.

:

:

:

:

:

CASE NO. CA2014-08-169

O P I N I O N
1/12/2015

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PA13-02-0020

Barry Spaeth, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202, for petitioner-
appellee

Fred S. Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for
respondent-appellant

**M. POWELL, J.**

{¶ 1}   Respondent-appellant, B.J.A., appeals from the decision of the Butler County

Court of Common Pleas, Probate Division, finding his consent as the biological father of

L.C.W., his daughter, was unnecessary to proceed with her adoption by petitioner-appellee,

C.A.W., the child's stepfather.  For the reasons outlined below, we affirm.

{¶ 2}   B.J.A. (Father) is the biological father of L.C.W. (Daughter), who was born on

April 10, 2003.  Although living together for a brief period, Father and Daughter's mother,

J.D.W. (Mother), were never married. Father is a French citizen who resides in Paris working as a global marketing director for an international chemical company. Upon Daughter's request, C.A.W. (Step-Father), who married Mother on March 31, 2012, filed his petition to adopt Daughter on February 14, 2013.

{¶ 3} The facts in this matter are generally not in dispute. As relevant here, beginning in 2005, Father agreed to pay Mother $500 per month in child support. However, rather than providing Mother with the agreed monthly payments, Father instead made inconsistent and intermittent lump sum payments to Mother once or twice a year through a series of wire transfers. The wire transfers were initially made into an Emery Federal Credit Union bank account jointly held by Mother and Father. However, sometime in the year 2010, the wire transfers were credited to Mother's individual bank account at Fifth Third Bank. Mother later closed her Fifth Third Bank account in December 2012. It is undisputed the last child support payment Father made was to Mother's individual Fifth Third Bank account on November 28, 2011 in the amount of €3,000 euros (equal to $3,991.05 dollars). It is also undisputed that their jointly held bank account at Emery Federal Credit Union remained open at all times relevant.

{¶ 4} The probate court held a hearing on Step-Father's adoption petition, during which evidence was presented regarding Father's failure to pay his agreed upon child support payments. According to Father, he had not made any child support payments since November 2011 because Mother never gave him a new bank account number after she closed her individual Fifth Third Bank account in December 2012. Father testified he wanted to make an additional child support payment, "[b]ut for this I need a new account number." In addition, Father testified Mother did not tell him what bank account to send his child support payment to because it was "manipulation" in anticipation of the adoption. Father also testified Mother told him never to use their jointly held bank account at Emery Federal Credit

Union because it made Step-Father jealous, thereby making that account "completely useless."

{¶ 5} Mother, however, denied these allegations and further testified that she never did anything to prevent Father from making his child support payments into their jointly held bank account at Emery Federal Credit Union. Specifically, as Mother testified on cross-examination:

> Q: Now. He paid you in 2011 to these various accounts, correct?
>
> A: Yes.
>
> Q: Then you told him that he is not to send money to that account [their joint account at Emery Federal Credit Union] any further, correct?
>
> A: No.
>
> Q: You told him that your husband is jealous that he was sending money to that account, correct?
>
> A: No.
>
> Q: You told him that you wanted to set up your own account for him to send money into. Is that correct?
>
> A: No.

{¶ 6} After the parties rested, the probate court took the matter under advisement, subsequently entering a decision granting Step-Father's petition to adopt Daughter on May 29, 2014. As part of that decision, the probate court found Father's consent to the adoption was unnecessary pursuant to R.C. 3107.07(A) because there was no justifiable cause for his failure to provide his agreed upon child support payments to Mother between February 14, 2012 and February 14, 2013, the year immediately preceding when Step-Father filed his adoption petition.

{¶ 7} Father now appeals from that decision, raising one assignment of error for

review.[1]

**{¶ 8}** THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DETERMINED THAT HE HAD FAILED TO PAY CHILD SUPPORT DURING THE STATUTORY ONE-YEAR PERIOD.

**{¶ 9}** In his single assignment of error, Father argues the probate court erred by finding his consent to Daughter's adoption was unnecessary pursuant to R.C. 3107.07(A). Specifically, Father claims the probate court erred by finding there was no justifiable cause for his failure to provide his agreed upon child support payments to Mother between February 14, 2012 and February 14, 2013, the year immediately preceding when Step-Father filed his adoption petition. We disagree.

**{¶ 10}** The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption, however, permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 55 (10th Dist.1989). Therefore, "[b]ecause adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists." *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5, citing *In re Caudill*, 4th Dist. Jackson No. 05CA4, 2005-Ohio-3927, ¶ 14.

**{¶ 11}** R.C. 3107.07(A) provides an exemption to the general parental consent

---

1. Step-Father presented two cross-assignments of error as part of his appellee brief. Step-Father, however, did not file a notice of cross-appeal with this court as required by App.R. 3(C)(1). As that rule states, "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4." Therefore, by not filing a notice of cross-appeal, Step-Father's two cross-assignments of error were not properly before this court and were therefore stricken from the record by entry dated December 17, 2014. *See, e.g., In Matter of Benner*, 12th Dist. Butler No. CA95-03-041, 1996 WL 12878, *3 (Jan. 16, 1996) (finding grandparents cross-assignment of error was not properly before the court when they did not file a notice of cross-appeal as required by App.R. 3(C)(1)); *see also Aztec Internatl. Foods, Inc. v. Duenas*, 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 60.

requirement. As pertinent here, pursuant to that statute, consent to an adoption is not required where:

> [a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to * * * provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 12} When the petitioner alleges that a parent's consent is not required based on a failure to provide support for the child, such as the case here, the burden is on the petitioner to establish by clear and convincing evidence that both: (1) the parent has failed to support the child for the requisite one-year period and (2) this failure was without justifiable cause. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 22. To that end, the petitioner must first establish that in the year preceding the filing of the adoption petition, the natural parent failed to support the child. *Id.* Once the petitioner has established this failure, the burden of going forward with the evidence shifts to the parent to show some facially justifiable cause for such failure. *In re R.N.L.O.*, 12th Dist. Warren No. CA2007-04-049, 2007-Ohio-4215, ¶ 10. "The burden of proof, however, remains with the petitioner." *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph two of the syllabus.

{¶ 13} In this case, it is undisputed that Father made his last child support payment to Mother on November 28, 2011 by transferring €3,000 to Mother's individual Fifth Third Bank account. As the trial court found, this payment was made to offset Father's child support payments previously accrued and did not represent any child support payments that became due during the one-year period immediately preceding when Step-Father filed his adoption petition. Neither party has challenged these findings, nor do the parties dispute the fact that Father was required by law to financially support Daughter. Therefore, the only issue before

this court is whether the probate court erred by finding Step-Father met his burden of proof, thereby rendering Father's consent to the adoption unnecessary.

{¶ 14} "Whether the petitioner has proven by clear and convincing evidence that the natural parent has failed to support his or her child without justifiable cause is a determination for the probate court, and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of G.T.R.*, 12th Dist. Clermont No. CA2007-03-039, 2007-Ohio-3719, ¶ 16, citing *Bovett* at paragraph four of the syllabus. In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, "the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial." *In re Adoption of E.E.R.K.*, 2d Dist. Miami No. 2013 CA 35, 2014-Ohio-1276, ¶ 18, citing *Stegall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

{¶ 15} As noted above, Father claims he did not make his agreed upon child support payments because Mother failed to provide him with a new bank account number after she closed her account at Fifth Third Bank in December 2012. It is undisputed, however, that their jointly held bank account at Emery Federal Credit Union remained open at all times. Nevertheless, Father did not deposit any additional child support payments into this account after November 2011. In addition, the probate court found Father's explanation as to why he did not use their joint account to make his child support payments, i.e., Father's claim that Step-Father was jealous of him, was "not * * * very plausible," when contrasted by Mother's explicit denial of such allegations.

{¶ 16} It is well-established that under these circumstances "[t]he probate court is in the best position to observe the demeanor of the parties and assess the credibility and

accuracy of their testimony." *In re C.M.F.*, 2013-Ohio-4719 at ¶ 16; *In re Adoption of Beck*, 12th Dist. Clermont No. CA98-10-093, 1999 WL 559693, *3 (Aug. 2, 1999), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367 (1985).  Moreover, "[a] trial court is 'free to believe all, part, or none of the testimony of any witness who appears before it.'"  *In re Adoption of M.C.*, 4th Dist. Jackson No. 11 CA5, 2011-Ohio-6527, ¶ 19, quoting *Rogers v. Hill*, 124 Ohio App.3d 468, 470 (4th Dist.1998); *In re Adoption of A.L.C.*, 7th Dist. Belmont No. 14 BE 4, 2014-Ohio-4045, ¶ 8.  That is exactly what the probate court did here in discrediting Father's testimony.

{¶ 17}  Furthermore, while it may be true that Mother did not provide Father with a new bank account number after she closed her individual account at Fifth Third Bank, as the probate court found, her individual bank account with Fifth Third Bank remained open the majority of the year, closing in December 2012, a full calendar year after Father made his last child support payment.  There is also nothing in the record that would indicate Father was in any way precluded from simply mailing his child support payment to Mother.  As this court has stated previously, "the probate court should look to the entire duration of the failure to support, rather than a single period within the preceding year."  *In re Adoption of Myers*, 12th Dist. Clermont No. CA2001-02-025, 2001 WL 672841, *2 (June 18, 2001).  Therefore, even if there was some truth to Father's claim regarding Mother's instructions not to use their jointly held bank account at Emery Federal Credit Union, we find this still does not provide justifiable cause as to why he, a sophisticated international business man, failed to pay any child support to Mother since November 2011.

{¶ 18}  In light of the foregoing, and after a thorough review of the record before this court, we find the probate court's decision finding Step-Father met his burden of proof by clear and convincing evidence was not against the manifest weight of the evidence, thereby rendering Father's consent to Daughter's adoption unnecessary.  Accordingly, Father's single

assignment of error is overruled.

**{¶ 19}** Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.