[Cite as *In re Adoption of O.J.B.*, 2020-Ohio-4184.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2020-01-004 |
| ADOPTION OF O.J.B. | : | O P I N I O N<br>8/24/2020 |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20195052

Mother, c/o James Dearie, 12 East Warren Street, Lebanon, Ohio 45036, appellant, pro se

Diehl & Hubbell, LLC, Kelly McKoy, 304 East Warren Street, Lebanon, Ohio 45036, for appellees

**M. POWELL, P.J.**

{¶ 1}   Appellant, the biological mother of O.J.B. ("mother"), appeals the decision of the Warren County Court of Common Pleas, Probate Division, determining that her consent to O.J.B.'s adoption was not required.  For the reasons discussed below, we affirm the probate court's decision.

{¶ 2}   O.J.B. was born in August 2017.  Shortly after his birth, O.J.B.'s maternal grandparents, appellees herein, ("grandmother" and "grandfather" individually, or "grandparents" collectively), received temporary custody of O.J.B. through the Warren

County Juvenile Court. The juvenile court restored custody of O.J.B. to mother in March 2018. Due to renewed safety concerns, grandparents again received temporary custody of O.J.B. through an emergency order in April 2018. At that point, mother traveled to Hawaii with O.J.B. In June 2018, grandparents were able to locate mother and, with the assistance of local law enforcement, retrieve O.J.B.. Following O.J.B.'s return to Ohio, in August 2018, the juvenile court granted grandparents legal custody. Mother did not appear at the hearing for legal custody.

{¶ 3} Grandparents filed a petition to adopt O.J.B. on July 1, 2019. The probate court held a hearing in September 2019 in which mother appeared and objected to the adoption. The probate court chose to bifurcate the hearing on grandparents' adoption petition and separately address the issues of the necessity of parental consent and the child's best interest. In November 2019, the probate court held a hearing on the issue of parental consent. At this hearing, the probate court heard testimony from grandmother, grandfather, and mother. In addition, both parties presented several documentary exhibits, including the order from the juvenile court granting grandparents legal custody of O.J.B. and screenshots of several text message conversations between mother and grandparents. As a result of the hearing, the probate court determined that mother's consent to the adoption was not required because mother had unjustifiably failed to engage in more than de minimis contact with O.J.B. or to provide maintenance and support to O.J.B. in the year immediately preceding the filing of the adoption petition.[1]

{¶ 4} Mother appeals that decision, raising one assignment of error for review.

{¶ 5} Sole Assignment of Error:

---

1. While O.J.B.'s biological father did not provide consent, he also did not appear before the probate court on this matter to contest the adoption. The probate court determined that the biological father's consent was not required pursuant to R.C. 3107.07(A). Father has not appealed that determination.

{¶ 6} THE TRIAL COURT ERRED BY HOLDING THAT PETITIONERS NEED NOT OBTAIN THE CONSENT OF MOTHER IN ORDER FOR THE PETITION FOR ADOPTION OF O.J.B. TO PROCEED

{¶ 7} In her sole assignment of error, mother argues the trial court erred in determining that her consent to the adoption was not required. In support, she contends that she maintained "significant" contact with her child during the year preceding the adoption petition and that she had no obligation to provide support. Mother alternatively asserts that any failure to maintain contact was justifiable because grandfather had prevented her from contacting O.J.B. since February 2019, and she was unable to physically meet with O.J.B. because she was thousands of miles away in Hawaii. Finally, mother argues that any failure to provide support was justifiable because she was "barely making enough to support herself," had additional expenses relating to the birth and care of her second child, and any extra money she earned she saved to afford travel to Ohio.

{¶ 8} Natural parents have the right to the care and custody of their children. *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 10; R.C. 3107.15. In consideration of the natural parents' right to the care and custody of their child, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists. *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5.

{¶ 9} At issue here is the exemption to parental consent found in R.C. 3107.07(A). Parental consent to an adoption is not required by

> [a] parent of a minor, when it is alleged in the adoption petition
> and the court, after proper service of notice and hearing, finds
> by clear and convincing evidence that the parent has failed

without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

R.C. 3107.07(A). Plainly stated, to find this exemption applicable the probate court must engage in a two-step analysis: (1) determine whether the parent failed to engage in more than de minimis contact with the minor or failed to provide for the maintenance and support to the minor, and (2) determine whether the parent had justifiable cause for the failure to contact or provide support. *In re adoption of J.F.M.*, 12th Dist. Butler No. CA2016-03-044, 2016-Ohio-4823, ¶ 11. The first element is written in the alternative; as a result, the probate court need only find either a lack of contact with the minor or a failure to provide maintenance and support to the minor. *In re Adoption of C.H.B.*, 3d Dist. Crawford No. 3-19-18, 2020-Ohio-979, ¶ 19; *accord In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304 (1980) (addressing the use of "or" in a former version of R.C. 3107.07[A] and construing its meaning to be disjunctive); *see also In re Adoption of G.T.R.,* 12th Dist. Clermont No. CA2007-03-039, 2007-Ohio-3719, ¶ 22.

{¶ 10} The petitioner bears the burden of proving each element by clear and convincing evidence. *In re adoption of S.A.N.*, 12th Dist. Warren No. CA2019-03-025, 2019-Ohio-3055, ¶ 8. After the petitioner has established the parent's lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although, the burden of proof remains on the petitioner. *Id.*, citing citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104 (1987).

{¶ 11} An appellate court applies two different standards of review to the probate court's decision on parental consent. The probate court has discretion to determine whether the parent's contact with the child or provision of support met the statutory standard,

- 4 -

therefore, an appellate court reviews the probate court's determination of this element for an abuse of discretion. *See In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 25. An abuse of discretion is more than an error of law or judgment, it is a decision that is unreasonable, arbitrary, or unconscionable. *In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 16.

{¶ 12} For the second element, justifiable cause, an appellate court applies a manifest weight of the evidence standard. An appellate court will not overturn the probate court's determination unless it was against the manifest weight of the evidence. *See In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph two of the syllabus. On a manifest weight of the evidence review, this court examines the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 14.

{¶ 13} Here, the probate court found that mother neither sufficiently contacted O.J.B. in the year preceding the adoption petition, nor provided any maintenance or support for O.J.B. Regarding the interaction between mother and O.J.B., the probate court observed that contact was sporadic. Mother directly spoke to O.J.B. on only one occasion between June 2018 and July 2019 via a telephone call. The court noted that mother requested to speak with O.J.B. through video call on two other occasions, but neither video call occurred. In the first instance, mother and grandparents arranged for a call in September 2018, but mother did not show up for the scheduled call. In the second instance, mother called grandparents sometime in January 2019 to arrange a video call. During this meeting mother became vocally argumentative with grandparents, such that grandfather ended the telephone call before the parties could further arrange a video call. The probate court also

- 5 -

found that mother did not engage in any other form of communication with O.J.B.; she did not send emails, cards, text messages, or gifts to the minor. Finally, the probate court found that grandparents resided at the same address the entire period and maintained the same email address and telephone number.

{¶ 14} Considering the lack of maintenance and support, the probate court found that mother did not provide for O.J.B.'s support or maintenance yet she had worked various jobs throughout the look-back period. The probate court noted that mother did not have a child support obligation imposed upon her by court order, but that mother had a general duty, pursuant to R.C. 3103.03(A), to provide support for her child. The absence of a court ordered child support obligation was not a legitimate reason for mother's failure to provide any support. Thus, the probate court found that, while mother's means to provide support may have been limited, it was not justifiable for her to offer nothing on behalf of O.J.B.

{¶ 15} After review of the record, we find that the probate court did not err when it determined that mother's consent was not required for the adoption to proceed. Contrary to mother's assertion on appeal that she had "significant" contact, mother admitted at the hearing that she only communicated with O.J.B. on one occasion via telephone. Additionally, mother had no physical interaction with O.J.B. because she lived in Hawaii and never visited Ohio between June 2018 and July 2019. One telephone call, over the course of a year, is not "significant" contact. *See e.g. In re Adoption of T.U.*, 6th Dist. Williams No. WM-19-012, 2020-Ohio-841, ¶ 25 (must be more effort than one time contact); *see also In re Adoption of K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 10. Moreover, grandmother testified that mother never asked to speak to O.J.B. after February 2019. The lack of communication between mother and O.J.B. is in contrast to mother's communication with grandmother. While also irregular and limited, mother stayed in touch with grandmother. Grandmother testified that her contact with mother consisted of a few

telephone calls, 23 text messages, 11 voice mails, and several emails that went into April or May 2019. Regarding support provisions, mother admitted that she did not give any money to grandparents in support of O.J.B. or otherwise send clothing, food, or other supplies for O.J.B.'s maintenance. Based on the record before us, it was not unreasonable, arbitrary, or unconscionable for the probate court to determine that mother failed to engage in more than de minimis contact with the minor and failed to provide maintenance and support for the minor.

{¶ 16} Turning to the next element, the record establishes that mother's failures to engage in more than de minimis contact with O.J.B. or to provide support for him was without justifiable cause. Mother argues that she was justified in not contacting O.J.B. because grandfather barred contact. On appeal mother argues that grandfather prevented contact around February 2019, however, this differs from her testimony at the hearing wherein she indicated grandfather prohibited her contact in the fall of 2018. The record further belies mother's contention that grandparents interfered with her contact because both grandmother and mother testified that they tried, but failed, to arrange a video call with O.J.B. around January 2019. Also, mother admitted that she stayed in contact with grandmother into mid-2019 and grandmother never expressly told her not to contact O.J.B. Grandfather testified that he only spoke to mother on a few occasions during the look-back year. Grandfather acknowledged that he told mother to return to Ohio to care for O.J.B and that he refused to pay for mother's travel expenses, however, he testified that he did not prohibit her from contacting O.J.B. Therefore, the record shows that grandparents did not significantly interfere with mother's ability to contact O.J.B. *See e.g. In re Adoption of A.L.S.*, 2018-Ohio-507 at ¶ 26 (no substantial interference by adoption petitioner where parent knew where child resided, yet never visited, and only engaged in sporadic telephone calls). Also, mother admitted that she did not engage in other indirect forms of communication with

O.J.B such as postcards or emails. Mother's argument that these indirect forms of communication would be futile due to O.J.B.'s age are unpersuasive. The probate court did not clearly lose its way in determining that mother's consent to the adoption was not required due to her failure to have no more than de minimis contact with O.J.B. in the one year period immediately preceding the filing of the adoption petition.

{¶ 17} As to justifiable cause for failing to provide support, mother's reliance on *In re Adoption of B.I.,* 157 Ohio St.3d 29, 2019-Ohio-2450, is misplaced. At issue in *In re Adoption of B.I.* was the effect of a "no-support order" on a parent's general statutory obligation to provide child support pursuant to R.C. 3103.03.[2] *Id.* at ¶ 21. Where a judicial decree imposes an initial "no-support order" or modifies an existing order to be a "no-support order," that "no-support order" supersedes the parent's general statutory obligation and may be relied upon by the parent in a subsequent adoption action. *Id.* at ¶ 30. As such, the supreme court held that "a parent's nonsupport of his or her minor child pursuant to a judicial decree does not extinguish the requirement of that parent's consent to the adoption of the child." *Id.* at ¶ 1. Unlike that case, here, the probate court found that there was no court ordered child support obligation for O.J.B. The record supports this finding. Consequently, no judicial decree superseded mother's general statutory obligation. Mother's argument that she did not have a duty to provide support and maintenance to O.J.B. lacks merit.

{¶ 18} Next, it is the "period as a whole" that the probate court must consider when determining whether there was justifiable cause for the parent's lack of support. *In re adoption of Bovett,* 33 Ohio St.3d 102 at paragraph three of the syllabus. Moreover, "ability

---

2. The supreme court defined "no-support orders" as "orders terminating previously ordered support, zero-support orders, and orders modifying a previously ordered support amount to zero." *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450 at ¶ 16 fn 1.

to pay is a key factor in determining whether there is justifiable cause for failure to support a child." *In re Adoption of Masa*, 23 Ohio St.3d at 167. Mother testified that she was employed through August or September 2018 when she stopped working to prepare for her second child's birth in October 2018. After the birth of her second child, she stayed home to nurse and care for the newborn but reentered the workforce around January or February 2019. Mother did not explain how she provided for herself or her second child during the birthing and nursing period, but she acknowledged that she lived with O.J.B.'s biological father at some point and he contributed money to the household. Nonetheless, the evidence shows that mother had means by which she could provide some support for O.J.B. between July 2018 to July 2019. Therefore, in considering the period as a whole, the probate court did not clearly lose its way when it determined there was no justifiable cause for mother to completely fail to contribute support.

{¶ 19} Finally, mother acknowledged at the hearing that she was willing and able to provide support for O.J.B. but believed it was unnecessary to send money or supplies to grandparents because they did not need it or request it. As the Ohio Supreme Court has explained, "one of the factors which the probate court may consider in addition to ability but failure to pay court-ordered support is the *voluntariness* or *intent* of the parent's failure to make such payments." (Emphasis added.) *In re Adoption of Lay*, 25 Ohio St.3d 41, 43 (1986). Here, mother's admission shows that the lack of support was an intentional decision to withhold funds and supplies. Accordingly, the probate court's determination that there was no justifiable cause for mother's failure to support O.J.B. was not against the manifest weight of the evidence.

{¶ 20} In light of the foregoing, mother's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.