[Cite as *In re Adoption of C.E.S.*, 2020-Ohio-6902.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | CASE NOS. CA2020-07-069 |
| THE ADOPTION OF C.E.S., JR., et al. | | CA2020-07-070 |
| | : | CA2020-07-071 |
| | : | O P I N I O N |
| | | 12/28/2020 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case Nos. PA19-02-0021; PA19-02-0022; PA19-02-0023; PA20-06-0052

The Lampe Law Office, LLC, Vicki L. Richmond, Thomas S. Sapinsley, 9277 Centre Point Drive, Suite 100, West Chester, Ohio 45069, for appellants

Cook Howard Law, Ltd., Melynda W. Cook Howard, 1501 First Avenue, Middletown, Ohio 45044, for appellee

**S. POWELL, J.**

{¶ 1} Appellants, J.S. ("Stepmother 1"), the stepmother of C.E.S., Jr., and K.W. ("Stepmother 2"), the stepmother of E.A.W. (collectively, "Stepmothers"), appeal the decision of the Butler County Court of Common Pleas, Probate Division, finding appellee, S.W. ("Mother"), the biological mother of C.E.S., Jr. and E.A.W., must give her consent

before either child could be adopted. For the reasons outlined below, the judgment appealed from in Case No. CA2020-08-070 is dismissed as moot and the judgments appealed from in Case Nos. CA2020-08-069 and CA2020-08-071 are affirmed.

**The Parties**

{¶ 2} This appeal involves two children, C.E.S., Jr. ("Child 1") in Case No. CA2020-07-069 and E.A.W. ("Child 2") in Case No. CA2020-07-071. The younger child, Child 1, was born issue of Mother's marriage to C.E.S., Sr. ("Father 1") on January 19, 2009. Mother and Father 1 were divorced on December 9, 2010. Stepmother 1 then married Father 1 on July 20, 2013. The older child, Child 2, was born issue of Mother's marriage to E.W. ("Father 2") on February 22, 2005. Mother and Father 2 were divorced on August 19, 2008. Stepmother 2 then married Father 2 on May 24, 2009.

{¶ 3} This appeal had originally involved a third child, B.A.W. ("Child 3") in Case No. CA2020-08-070. Child 3 was born issue of Mother's marriage to Father 2 on March 20, 2002. However, as confirmed by the probate court's final order of adoption attached to Stepmothers' brief, Child 3 has since reached the age of majority and been subject to an adult adoption by Stepmother 2 on August 6, 2020. Under these circumstances, and for purposes of judicial economy, we take judicial notice of the probate court's final order of adoption and dismiss the appeal in Case No. CA2020-08-070 as moot. *See State ex rel. Ormond v. Solon,* 8th Dist. Cuyahoga No. 92272, 2009-Ohio-1097, ¶ 15 ("we may take judicial notice of findings and judgments as rendered in other Ohio cases"); *see also Napier v. Ickes*, 5th Dist. Licking No. 2018 CA 00081, 2019-Ohio-2700, ¶ 88 ("[a] court may take judicial notice of mootness"); and *Pewitt v. Lorain Correctional Inst.*, 64 Ohio St.3d 470, 472 (1992) ("an event that causes a case to be moot may be proved by extrinsic evidence outside the record").

**Facts and Procedural History**

{¶ 4}  On September 19, 2017, the Butler County Department of Job and Family Services ("BCDJFS") filed a complaint with the Butler County Court of Common Pleas, Juvenile Division, alleging that both Child 1 and Child 2 were abused and dependent children.[1]  After receiving BCDJFS' complaint, the juvenile court issued an emergency ex parte order placing the children in the emergency temporary custody of their respective fathers, Father 1 and Father 2.  The emergency ex parte order also granted Mother supervised visitation time with the children.  Two days later, on September 21, 2017, the juvenile court held a shelter care hearing.  Following this hearing, the juvenile court issued an order granting temporary custody of Child 1 and Child 2 to Father 1 and Father 2, respectively.  It is undisputed that Mother had custody of both children prior to the juvenile court issuing its emergency ex parte and temporary custody orders.

{¶ 5}  On November 16, 2017, the juvenile court held an adjudication hearing. Because Mother was in the hospital receiving treatment for her mental health disorders, Mother did not attend this hearing.  Following this hearing, the juvenile court issued a decision adjudicating both Child 1 and Child 2 as abused and dependent children.  As part of this decision, the juvenile court determined that Mother was the perpetrator of the abuse. The juvenile court also found that it was in Child 1's and Child 2's best interest to suspend Mother's supervised visitation time with the children until Mother had completed a psychiatric and psychological evaluation.  It is undisputed that Mother never attended any supervised visits with the children after they were removed from Mother's care.

---

1. We note that BCDJFS filed two separate complaints under two separate case numbers, one for Child 1 and one for Child 2.  For ease of discussion, we will treat BCDJFS' two complaints as if only one complaint had been filed under one case number that covered both children.  The same is true as it relates to the entries and orders issued by the various courts discussed throughout the remainder of this opinion.

{¶ 6}   On January 10, 2018, the juvenile court held a disposition hearing.  Just like the adjudication hearing, Mother did not attend this hearing because she was in the hospital receiving treatment for her mental health disorders.  Following this hearing, the juvenile court issued a dispositional decision granting legal custody of Child 1 to Father 1, and Child 2 to Father 2.  The juvenile court's dispositional decision also contained a no contact order that stated, in pertinent part, the following:

- Mother's contact with the child[ren] shall remain suspended until such time that Mother files a motion with the court.

- In order to resume visitation, Mother shall be required to provide evidence that her mental health issues have been successfully addressed such that resuming contact would be in the child[ren]'s best interest.

{¶ 7}   Beginning on January 8, 2018, Mother was subject to a civil commitment order issued by the probate court.  The civil commitment order was issued by the probate court pursuant to the authority granted to it under R.C. Chapter 5122, a statutory scheme that permits a probate court to find a person like Mother a "mentally ill person" subject to hospitalization by order of the court.  Mother was released from the probate court's civil commitment order on September 18, 2018.  During Mother's time under the probate court's civil commitment order, Mother was diagnosed with, and received treatment for, psychogenic nonepileptic seizures, posttraumatic stress disorder, major depressive disorder, and bipolar disorder.  This was in addition to the treatment Mother received for the residual effects of the stroke Mother suffered in 2013.

{¶ 8}   On February 28, 2019, approximately four months after Mother was released from the probate court's civil commitment order, Stepmother 1 filed a petition with the

- 4 -

probate court requesting permission to adopt Child 1.[2]  That same day, Stepmother 2 filed a petition with the probate court requesting permission to adopt Child 2.[3]  After receiving notice of Stepmothers' adoption petitions, Mother filed an objection to both Stepmother 1's and Stepmother 2's petitions noting that she did not consent to either child being adopted. Mother also filed motions with the juvenile court requesting the juvenile court implement a shared parenting plan and/or grant her legal custody of Child 1 and Child 2.  These motions were in addition to Mother's motion requesting the juvenile court grant her visitation time with the children.  Mother filed these motions with the juvenile court on April 25, 2019.

{¶ 9}  On January 22 and February 5, 2020, the probate court held a two-day hearing on the issue of whether Mother's consent was necessary before either Child 1 or Child 2 could be adopted.  During this hearing, the probate court heard testimony from Stepmothers, Mother, Father 1, and Father 2, among others.  The probate court also admitted numerous exhibits from both Stepmothers and Mother.  These exhibits included, but were not limited to, several court filings issued by the juvenile court, as well as the various medical release forms executed by Mother.  The record indicates that Mother then provided these medical release forms to her attorney so that her attorney could obtain the documentation needed to file a motion with the juvenile court requesting permission for Mother to resume contact with Child 1 and Child 2 as required by the juvenile court's no contact order.

**The Probate Court's Decision**

---

2. We note that Stepmother 1 filed an amended petition for adoption of Child 1 on April 11, 2019 to correct several clerical errors in her original petition.  This includes Stepmother 1 failing to note that Father 1 had consented to the adoption.

3. We note that Stepmother 2 filed an amended petition for adoption of Child 2 on April 8, 2019 to correct a number of clerical errors in her original petition.  This includes Stepmother 2 amending her petition to provide Child 2's correct date of birth.

{¶ 10} On June 10, 2020, the probate court issued a decision finding Mother's consent was necessary before either Child 1 or Child 2 could be adopted. In so holding, the probate court noted that there was no dispute that Mother had not had any contact with either child in the year immediately preceding when Stepmothers' filed their original adoption petitions. The probate court, however, found Mother had a justifiable cause for this failure given the juvenile court's order forbidding her from having contact with either Child 1 or Child 2 until she filed a motion that established her mental health issues had been successfully addressed such that Mother resuming contact with the children would be in the children's best interest. Therefore, given the juvenile court's no contact order, the probate court determined that Stepmothers had failed to satisfy their burden to prove, by clear and convincing evidence, that Mother was without justifiable cause for her failure to have contact with either child during the requisite one-year look-back period.

{¶ 11} In reaching this decision, the probate court found Mother had been "substantially disabled" from a "variety of medical and mental disorders" throughout the entirety of that one-year look-back period. Specifically, as the probate court stated:

> The Court finds that [Mother] experienced a stroke in 2013 and began receiving Social Security Disability benefits in 2015. The Court finds that [Mother] was hospitalized for treatment of the symptoms of a mental health disorder on September 18, 2017, when the children were taken from her custody by the Juvenile Court. [Mother] was again hospitalized in December 2017, and again early in January of 2018, for treatment of the symptoms of a mental health disorder. On January 8, 2018, [Mother] was ordered held by this Court in a civil commitment proceeding, which resulted in a finding that [Mother] was a "mentally ill person subject to court order."

{¶ 12} Continuing, the probate court stated:

> [Mother] remained under that commitment order until September 2018. During that period of time she was released from the hospital and received outpatient treatment, which was

monitored by the Court. The Court finds that during the entirety of the requisite one year period [Mother] lived with medical and mental disorders that include: Major Depressive Disorder, Bipolar Disorder, Post-Traumatic Stress Disorder (PTSD), Psychogenic Non-Epileptic Seizure Disorder (PNES), and the residual effects of the stroke [Mother] had in 2013. The civil commitment order was terminated during September of 2018, but that did not "terminate" the disorders. [Mother] still has the same disorders, but her symptoms are more under control.

{¶ 13} The probate court also determined that, based on the totality of the circumstances, Stepmothers had failed to satisfy their burden to prove, by clear and convincing evidence, that Mother had failed, without justifiable cause, to provide for the maintenance and support of either Child 1 or Child 2 in that same look-back period. In so holding, the probate court noted that Mother had maintained medical insurance that covered both children during the years 2017 and 2018. The probate court also noted that Mother had received only $766 in Social Security Disability benefits per month in income, which she used to pay her necessary, and some de minimis discretionary, expenses. The probate court further noted that during the requisite one-year look-back period, neither Father 1 nor Father 2 had sought any form of maintenance and support from Mother for their respective children, Child 1 and Child 2, and were in fact "not interested in receiving any such maintenance and support" from Mother.

**Appeal and Stepmothers' Two Assignments of Error**

{¶ 14} Stepmothers now appeal the probate court's decision finding Mother's consent was necessary before either Child 1 or Child 2 could be adopted. In support, Stepmothers raise the following two assignments of error for review.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN FINDING APPELLEE'S CONSENT FOR ADOPTION IS REQUIRED FINDING APPELLEE HAD JUSTIFIABLE CAUSE FOR HER

FAILURE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE CHILDREN FOR ONE YEAR PRIOR TO FILING OF THE PETITIONS FOR ADOPTION.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED IN FINDING APPELLEE'S CONSENT FOR ADOPTION IS REQUIRED BECAUSE APPELLEE DID NOT FAIL (sic), WITHOUT JUSTIFIABLE CAUSE, TO PROVIDE FOR THE MAINTENANCE AND SUPPORT OF THE CHILDREN DURING THE YEAR IMMEDIATELY PRECEDING THE FILING OF THE ADOPTION PETITION.

**Rule of Law Applicable to Stepmothers' Two Assignments of Error**

{¶ 19} "Natural parents have the right to the care and custody of their children." *In re Adoption of O.J.B.,* 12th Dist. Warren No. CA2020-01-004, 2020-Ohio-4184, ¶ 8, citing *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption permanently terminates those rights. *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 10. Because adoption terminates those rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists. *In re N.R.H.N.*, 12th Dist. Clermont No. CA2020-05-024, 2020-Ohio-4266, ¶ 5. "[A]ny exception to the requirement of parental consent to adoption must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re B.N.S.,* 12th Dist. Butler Nos. CA2020-03-034 thru CA2020-03-036, 2020-Ohio-4413, ¶ 27, citing *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, ¶ 12.

{¶ 20} One of those statutory exemptions is found in R.C. 3107.07(A). Pursuant to that statute, a natural parent's consent to the adoption of his or her child is not required where the probate court finds by clear and convincing evidence that the parent failed, without justifiable cause, (1) to provide more than de minimis contact with the minor or (2)

to provide for the maintenance and support of the minor as required by law or judicial decree, for a period of at least one year immediately preceding the filing of the adoption petition. *In re M.E.F.,* 12th Dist. Clinton No. CA2018-10-017, 2019-Ohio-1291, ¶ 12, citing R.C. 3107.07(A). Therefore, under the plain language of the statute, even where a parent has failed to contact his or her child in the year immediately preceding the adoption petition being filed, or where a parent has failed to provide support and maintenance for his or her child during that one-year period, that parent's consent will still be required so long as there was a justifiable cause for that failure. *In re M.G.B.-E.*, 12th Dist. Clinton No. CA2018-10-016, 2019-Ohio-753, ¶ 12, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367 (1985), overruled on other grounds by statute.

{¶ 21} This creates a two-step analysis: (1) determine whether the parent failed to engage in more than de minimis contact with the child or failed to provide for the maintenance and support to the child in the year immediately preceding the filing of the adoption petition, and (2) determine whether the parent had justifiable cause for the failure to contact the child or provide maintenance and support for the child. *In re Adoption of J.F.M.*, 12th Dist. Butler No. CA2016-03-044, 2016-Ohio-4823, ¶ 11. But, even then, it is the petitioner who bears the burden of proving each element by clear and convincing evidence. *In re Adoption of S.A.N.*, 12th Dist. Warren No. CA2019-03-025, 2019-Ohio-3055, ¶ 8. Therefore, "[a]fter the petitioner has established the parent's lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although, the burden of proof remains on the petitioner." *In re Adoption of O.J.B.*, 2020-Ohio-4184 at ¶ 10.

**Standard of Review**

{¶ 22} "An appellate court applies two different standards of review to the probate

- 9 -

court's decision on parental consent." *Id.* at ¶ 11. This court applies an abuse of discretion standard of review as it relates to the probate court's decision as to whether a parent's contact with his or her child, or provision of maintenance and support for his or her child, met the statutory standard. *Id.*, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 25. An abuse of discretion is more than an error of law or judgment, it is a decision that is unreasonable, arbitrary, or unconscionable. *In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 16. "[T]he vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Effective Shareholder Solutions v. Natl. City Bank*, 1st Dist. Hamilton Nos. C-080451 and C-090117, 2009-Ohio-6200, ¶ 9. A decision is unreasonable where it is not supported by a sound reasoning process. *In re B.B.*, 12th Dist. Clermont No. CA2019-07-057, 2020-Ohio-4007, ¶ 22.

{¶ 23} However, as it relates to the probate court's decision on whether a parent had justifiable cause for the failure to contact or provide maintenance and support to his or her child, this court applies a manifest weight of the evidence standard of review. *In re Adoption of O.J.B.*, 2020-Ohio-4184 at ¶ 17 citing *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph two of the syllabus. On a manifest weight of the evidence review, this court examines the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of L.C.W.*, 2015-Ohio-61 at ¶ 14. In applying this standard, however, this court must be mindful that it is the probate court that "is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *In re Adoption of C.A.L.*, 12th Dist. Clermont

No. CA2015-01-010, 2015-Ohio-2014, ¶ 29.

**Stepmothers' First Assignment of Error**

{¶ 24} In their first assignment of error, Stepmothers argue the probate court's decision finding Mother had a justifiable cause for failing to contact Child 1 and Child 2 in the year immediately preceding when they filed their adoption petitions was against the manifest weight of the evidence. We disagree.

{¶ 25} Stepmothers argue the probate court's decision must be reversed because there were "striking conflicts" in the probate court's findings of fact with the actual evidence presented at the hearing on whether Mother's consent was necessary before Child 1 and Child 2 could be adopted. This, according to Stepmothers, indicates the probate court clearly lost its way and created a manifest miscarriage of justice. To support this claim, Stepmothers argue that it was error for the probate court to find Mother was "substantially disabled" from a "variety of medical and mental disorders" for the entirety of the requisite one-year look-back period. Stepmothers also argue that it was error for the probate court to find the medical and mental disorders Mother suffered from did not terminate when Mother was released from the probate court's civil commitment order and instead find Mother "still has the same disorders, but her symptoms are more under control."

{¶ 26} To advance these claims, Stepmothers cite to the following testimony elicited from Mother as part of their case-in-chief:

Q: You were doing great, were you not, September of 2018?

A: I felt good.

Q: Meaning you weren't having any psychological, emotional, mental problems, correct?

A: I wasn't – yeah, I wasn't going in the hospital or anything like that.

Q: But, you didn't feel as though you were suffering from any mental disease or having emotional problems back in –

A: I didn't feel like I was having emotional problems at the time.

Q: Okay. And, in fact, you had felt great. When I say great, I mean mentally, emotionally and psychologically you had been feeling great for quite some time.

A: I felt good. I felt good at that point.

{¶ 27} Based upon this testimony, which indicates Mother had an improved mental state after she was released from the probate court's civil commitment order, Stepmothers argue that Mother did not have a justifiable cause for failing to contact Child 1 and Child 2 after the probate court released her from that commitment. However, as the record indicates, Mother could not simply contact Child 1 and Child 2 whenever she pleased. This holds true regardless of whether Mother was subject to a civil commitment order. Mother was instead required to comply with the juvenile court's no contact order forbidding her from having contact with either child until she filed a motion with the juvenile court establishing her mental health issues had been successfully addressed such that Mother's resumed contact with the children would be in their best interest. This required Mother to take the time to obtain the necessary documentation to support such a motion, something which Mother ultimately did after procuring the services of, and meeting with, an attorney.

{¶ 28} Despite Stepmothers' claims, the fact that it took Mother more than just a few days or weeks to meet with her attorney and obtain the documentation needed to file the required motion with the juvenile court does not mean the cause for Mother's lack of contact with Child 1 and Child 2 was any less justified. Mother, having just been released from a civil commitment order that required her to undergo both inpatient and outpatient treatment to address her various medical and mental disorders, was acting in what she believed was

the best course of action to ensure that she would be successful in her efforts to resume contact with her children in as short a time as possible. This includes, for instance, hiring and meeting with an attorney. Mother should not be unduly punished by having her parental rights permanently terminated simply because she was unable to meet with her attorney any sooner than she did. *See In re Adoption of R.M.T.*, 12th Dist. Warren Nos. CA2017-12-177 and CA2017-12-178, 2018-Ohio-1691, ¶ 26 ("[t]he right to raise a child is an 'essential' and 'basic' civil right of any parent").

{¶ 29} After a thorough review of the record, and when taking into consideration the totality of the circumstances, we find the probate court did not err by finding Mother had a justifiable cause for failing to contact Child 1 and Child 2 in the year immediately preceding the filing of Stepmothers' adoption petitions. *See, e.g., In re B.V.K.M.*, 6th Dist. Lucas No. L-18-1137, 2019-Ohio-1173, ¶ 28-33 (probate court's decision finding appellant failed without justifiable cause to contact his child during the one-year look-back period was against the manifest weight of the evidence where appellant was subject to an order issued by the juvenile court that prohibited appellant from contacting his child until further order of the court as that no contact order "provided justification" for the lack of contact appellant had with his child). This is because, as noted above, Mother was acting in what she believed was the best course of action to succeed in her efforts to resume contact with her children under the unique facts and circumstances of this case. Therefore, finding no merit to any of Stepmothers' arguments raised herein, Stepmothers' first assignment of error lacks merit and is overruled.

**Stepmothers' Second Assignment of Error**

{¶ 30} In their second assignment of error, Stepmothers argue the probate court erred by finding they had not met their burden of proof requiring them to prove, by clear and

convincing evidence, that Mother had failed, without justifiable cause, to provide for the maintenance and support of Child 1 and Child 2 during the year immediately preceding the filing of Stepmothers' adoption petitions. We disagree.

{¶ 31} As noted above, the probate court found Mother, who had been receiving both inpatient and outpatient treatment to address her mental health issues since the children were removed from her care, had maintained medical insurance that covered both Child 1 and Child 2 during the years 2017 and 2018. Aside from Stepmothers' bare assertions to the contrary, there is nothing in the record to show Mother was not entitled to maintain that medical insurance for the children. There is also nothing in the record to show Mother could not claim the children on that medical insurance, even though Child 1 and Child 2 had been placed in their respective fathers' care. That is to say, based on the record properly before this court, Stepmothers' claims are nothing more than pure, unproven speculation as to what Mother could or could not do with respect to that medical insurance and the coverage it provided her and the children.

{¶ 32} The probate court also found that Mother had received only $766 in Social Security Disability benefits per month, which Mother used to pay her necessary, and some de minimis discretionary, expenses, thereby making it difficult, if not impossible, for Mother to provide any monetary support to Child 1 and Child 2 given her lack of income and other resources. *See In re Adoption of Masa*, 23 Ohio St.3d 163, 167 (1986) ("ability to pay is a key factor in determining whether there is justifiable cause for failure to support a child"); *see also In re Adoption of Willis*, 10th Dist. Franklin No. 88AP-1071, 1989 Ohio App. LEXIS 2369, *11 (June 15, 1989) ("[t]here is a critical distinction between a natural parent who is able to pay and yet unwilling and the parent who is completely unable to pay support"). The probate court further found that during the requisite one-year look-back period, neither

Father 1 nor Father 2 had sought any form of maintenance and support from Mother for their respective children, and were in fact "not interested in receiving any such maintenance and support" from Mother.

{¶ 33} In light of the foregoing, and taking into consideration the totality of the circumstances, we find no error in the probate court's decision finding Stepmothers had not met their burden of proof requiring them to prove, by clear and convincing evidence, that Mother had failed, without justifiable cause, to provide for the maintenance and support of either Child 1 or Child 2 in the year immediately preceding the filings of the adoption petitions. Mother, having little if anything to provide to Child 1 and Child 2 during the requisite look-back period, maintained medical insurance for both children during the years 2017 and 2018. This was done all while Mother was subject to a civil commitment order that required Mother to undergo both inpatient and outpatient treatment for her medical and mental health disorders. Therefore, although we understand Stepmothers' concerns, this is simply not one of those exceptional cases in which the evidence weighs heavily against the probate court's decision to render it against the manifest weight of the evidence. *See In re K.N.W.*, 4th Dist. Athens Nos. 15CA36 and 15CA37, 2016-Ohio-5863, ¶ 27 (this court will reverse a judgment as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the judgment"). Accordingly, finding no merit to any of the arguments raised by Stepmothers herein, Stepmothers' second assignment of error also lacks merit and is overruled.

{¶ 34} Judgment affirmed in Case Nos. CA2020-08-069 and CA2020-08-071 and appeal dismissed as moot in Case No. CA2020-08-070.

HENDRICKSON, P.J., and PIPER, J., concur.

- 15 -