[Cite as *In re Adoption of C.H.B.*, 2020-Ohio-979.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN RE:   THE ADOPTION OF:

    C.H.B.,

[R.A.V. - APPELLANT]

CASE NO.  3-19-18

O P I N I O N

Appeal from Crawford County Common Pleas Court
Probate Division
Trial Court No. 000934

Judgment Affirmed

Date of Decision:   March 16, 2020

APPEARANCES:

    *Anthony M. Heald*  for Appellant

    *Bradley S. Starkey* for Appellee

**SHAW, P.J.**

{¶1} This appeal, having been placed on the accelerated calendar, is *sua sponte* being assigned and considered on the regular calendar pursuant to Loc.R. 12(1). Under the authority of Loc.R. 12(5), we have elected to issue a full opinion in lieu of a judgment entry.

{¶2} Appellant-respondent, R.A.V. ("Father"), appeals the October 24, 2019 judgment of the Crawford County Court of Common Pleas, Probate Division, finding that appellees-petitioners, M.B. and K.B. ("Maternal Grandparents"), proved by clear and convincing evidence that Father's consent is not necessary to their petition for adoption of his child, C.H.B., as he had failed to provide more than *de minimis* contact with the child and had failed to provide maintenance and support for the child for a period of one year immediately preceding the filing of the petition or the placement of the minor in the home of the petitioners. As a result, the trial court ordered the case to proceed on the adoption without Father's consent. On appeal, Father argues that he had justifiable cause for failing to communicate with C.H.B. and for failing to provide maintenance and support for C.H.B. Therefore, Father contends that the trial court's decision is against the manifest weight of the evidence.

*Facts and Procedural History*

**{¶3}** C.H.B. was born in 2015 to I.J.K.B. ("Mother") and Father, who were never married to each other.[1] Petitioners are the parents of Mother and the maternal grandparents of C.H.B.

**{¶4}** On November 20, 2018, Maternal Grandparents filed a Petition for Adoption of C.H.B. alleging that Father's consent to the adoption is not required because (1) he had failed without justifiable cause to provide more than *de minimis* contact with C.H.B. for a year immediately preceding the filing of the adoption petition; and (2) he had failed without justifiable cause to provide for the maintenance and support of C.H.B. as required by law for a period of at least one year immediately preceding the filing of the adoption petition. *See* R.C. 3107.07(A). The same day, Mother filed her written consent to the adoption and Notice of a Hearing on the Petition was sent to Father.

**{¶5}** On January 2, 2019, Father filed an objection to the adoption. The parties also filed stipulations acknowledging that Father had been convicted by a jury in the Delaware County Common Pleas Court of one count of second degree felony child endangering and one count of third degree felony child endangering against C.H.B. in case number 15 CRI 09 0419. Both of the convictions involved additional findings of serious physical harm to C.H.B. The parties stipulated that

---

[1] The record reflects that Father's name appears on C.H.B.'s birth certificate and the parties entered into an agreed judgment entry acknowledging that Father is the biological father of C.H.B. (Doc. No. 14).

Father was ordered to have no contact with C.H.B. or Mother as a result of his convictions. Father was also sentenced to serve three years in prison commencing on May 16, 2016.

{¶6} The parties further stipulated that on September 25, 2018, Father was granted judicial release and placed on a five-year term of community control following his completion of a program at a Community Based Correctional Facility ("CBCF"). Father was released from the CBCF on January 2, 2019, and placed on community control. According to the stipulations, the conditions of Father's community control prohibit him from having contact with C.H.B. or Mother. With regard to the issue of support, the parties' stipulations stated that Father was incarcerated during the relevant one-year period and therefore he was unable to seek or obtain employment during that time.

{¶7} On January 17, 2019, the trial court issued an "Agreed Judgment Entry" ordering the parties to submit legal memoranda on the issue of whether Father's consent to the adoption petition is required under R.C. 3107.07(A). The agreed judgment entry further stated that "[t]hereafter this matter will be deemed submitted and the Court shall proceed to consider the stipulations and memoranda in fashioning orders as it deems appropriate." (Doc. No. 14).

{¶8} On January 28, 2019, Father filed a "Memorandum Contra" acknowledging his failure to communicate with and to provide support for C.H.B.,

but arguing that his consent is necessary for the adoption to proceed because his incarceration and the no contact provisions of his sentence constituted justifiable cause for his lack of contact and support. [2] Father further maintained his innocence in the ancillary criminal proceedings regarding his convictions for child endangerment, despite the jury verdicts underlying his convictions.

{¶9} On February 5, 2019, Maternal Grandparents filed a "Brief in Support of Final Adoption," arguing that Father's convictions for child endangerment against C.H.B. precluded him from asserting that his imprisonment and no contact orders arising from his conduct underlying those convictions constituted justifiable cause under R.C. 3107.07(A). Maternal Grandparents cited case law from multiple appellate districts in support of their position.

{¶10} On October 24, 2019, the trial court issued a judgment entry finding that Father had "failed without justifiable cause to provide more than *de minimis* contact with the child for at least one year immediately preceding the filing of the petition and that [he] has failed without justifiable cause to provide for the maintenance and support of the child for at least one year immediately preceding filing of the petition." (Doc. No. 17 at 2). Specifically, with respect to its conclusion

---

[2]The judgment entries imposing Father's sentence for his convictions for felony child endangering against C.H.B. and granting him judicial release were incorporated by reference in the parties' stipulation of facts and attached to the stipulation submitted to the trial court. Notably, the judgment entry of sentence, which governed the terms of Father's imprisonment during the relevant statutory time period under R.C. 3107.07(A), does not state that a no contact order with C.H.B was in place during Father's imprisonment.

on the issue of contact the trial court relied on case authority standing "for the proposition that a respondent who has been convicted and incarcerated for an offense against the child the subject of an adoption petition should not be allowed to reap any legal benefit from the consequences of that conviction." *See* id citing, *In re Adoption of A.S.*, 5th Dist. Licking No. 10-CA-140, 2011-Ohio 1505; *In re AK*, 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165.

{¶11} Father filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED ITS DISCRETION BY FINDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE OF A FAILURE WITHOUT JUSTIFIABLE CAUSE BY APPELLANT TO PROVIDE FOR THE MAINTENANCE AND SUPPORT OF HIS MINOR CHILD [C.H.B.] FOR A PERIOD OF AT LEAST ONE YEAR IMMEDIATELY PRECEDING EITHER THE FILING OF THE ADOPTION PETITION OR THE PLACEMENT OF THE MINOR IN THE HOME OF THE PETITIONERS, THE APPELLEES.**

**ASSIGNMENT OF ERROR NO. 2**

**THE COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED ITS DISCRETION BY FINDING THAT THERE WAS A FAILURE WITHOUT JUSTIFIABLE CAUSE BY APPELLANT TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH HIS MINOR CHILD [C.H.B.] FOR A PERIOD OF AT LEAST ONE YEAR IMMEDIATELY PRECEDING EITHER THE FILING OF THE ADOPTION PETITION OR THE PLACEMENT OF THE MINOR IN THE HOME OF THE PETITIONERS, THE APPELLEES.**

## ASSIGNMENT OF ERROR NO. 3

**THE COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED ITS DISCRETION BY FINDING THAT THE JURY'S VERDICT IN CASE NO. 18 CR I 09 0419 [SIC] MUST BE ACCEPTED IN THIS PROCEEDING AS ESTABLISHED FACT IN THAT DOING OTHERWISE WOULD CONSTITUTE EX POST FACTO CONJECTURE AND SPECULATION.**

{¶12} Initially, we note that on appeal Maternal Grandparents raise two issues in their brief that are not responsive to the assignments of error. First, Maternal Grandparents contend that the trial court's judgment entry finding that Father's consent to the adoption is not required does not constitute a final appealable order. To the contrary, the Supreme Court of Ohio has expressly held that a trial court's finding that consent is not required pursuant to R.C. 3107.07 is a final appealable order. *In re Adoption of Greer*, 70 Ohio St.3d 293 (1994). Moreover, in a footnote, the Court in *Greer* stated, "it should, therefore, be well-noted by practitioners before the probate bar that, to be timely, an appeal of an R.C. 3107.07 decision adverse to one claiming a right to withhold consent must be appealed within thirty days of the entry of the order finding consent unnecessary." *Id*. at fn. 1. The court reiterated in its footnote that failure to appeal final orders results in any future challenges to the finding being barred by res judicata. *Id*.

{¶13} Second, Maternal Grandparents argue that Father's objection to their adoption petition was filed outside the fourteen-day time limit prescribed by R.C.

3107.07(K) and therefore was not timely asserted. Thus, Maternal Grandparents now argue that Father's consent is not required pursuant to R.C. 3107.07(K).

{¶14} We recognize that under R.C. 3107.07(K), a parent's consent to adoption is not required if the parent receives proper notice of the adoption petition and "fails to file an objection to the petition within fourteen days." In the case at bar, however, the record reveals that Maternal Grandparents failed to raise this argument during the trial court proceedings. Rather, Maternal Grandparents proceeded to enter into a stipulation of facts and an agreed judgment entry permitting the trial court to rule on the matter based on submitted legal memoranda. It is well-settled that a party may not raise any new issues or legal theories for the first time on appeal. *See Matter of P.L.B*, 4th Dist. Lawrence No. 18CA19, 2019-Ohio-1056, ¶ 37. Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. *Id*.

{¶15} Accordingly, we find no merit to these arguments made by Maternal Grandparents and we turn to addressing the issues raised on appeal.

{¶16} For ease of discussion, we elect to address the first and second assignments of error together.

*First and Second Assignments of Error*

{¶17} In his first and second assignments of error, Father argues the trial court erred in finding that his consent to the adoption is not required. Specifically,

Father argues that the trial court erred in determining that he had failed without justifiable cause both to provide more than *de minimis* contact with the child and to provide proper maintenance and support during the one-year look-back period of R.C. 3107.07(A).

*Legal Standard*

{¶18} The right of natural parents to the care and custody of their children is one of the most precious and fundamental in law. *In re Adoption of Masa*, 23 Ohio St.3d 163, 164 (1986) citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 55 (10th Dist.1989). Therefore, "[b]ecause adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists." *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5 citing *In re Caudill*, 4th Dist. Jackson No. 05CA4, 2005-Ohio-3927, ¶ 14.

{¶19} One such statutory exception to the consent requirement is contained in R.C. 3107.07(A), which states.

> **Consent to adoption is not required of any of the following:**
>
> **(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at**

**least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.**

R.C. 3107.07(A). "R.C. 3107.07(A) is written in the disjunctive." *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, 2014 WL 6871352, ¶ 23. "Therefore, a failure without justifiable cause to provide *either* more than *de minimis* contact with the minor or maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *Id.*; *see also In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶20} The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *See In re the Adoption of B.G.F.*, 3d Dist. Shelby No. 17-18-06, 2018-Ohio-5063, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23.

{¶21} The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than *de minimis* contact with the child. *In re Adoption of M.B.* at ¶ 23. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in

the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "A trial court has discretion to make these determinations, and, in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." *In re Adoption of M.B.* at ¶ 25. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶22} If a probate court makes a finding that the parent failed to support or contact the children, the court proceeds to the second step of the analysis and determines whether the petitioner proved by clear and convincing evidence that this failure was without justifiable cause. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236. The question of whether justifiable cause for the failure to contact the child has been proven in a particular case, "is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Id.* "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of

the judgment and an order for a new trial." (Internal quotations omitted.) *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, 2015 WL 135320, ¶ 14. In so doing, we must be mindful that the probate court is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony.[3]

*1. Failure to Provide Contact*

{¶23} The parties stipulate that Father had no communication with C.H.B. during the relevant statutory time period. However, Father maintains that the no contact orders issued in his criminal case constitute justifiable cause and therefore the requirement for his consent to the adoption cannot be obviated. The trial court concluded the following with respect to Father's failure to contact C.H.B:

> **The petitioner cites the cases of <u>In re Adoption of A.S.</u> (2011) 2011-Ohio-1505, and <u>In re A.K.</u> (2017) 2017-Ohio-9165, as authority for the proposition that a respondent who has been convicted and incarcerated for an offense against the child the subject of an adoption petition should not be allowed to reap any legal benefit from the consequences of that conviction. This court finds the reasoning set forth in those two decisions to be persuasive and applicable in this case. So, based upon the incarceration and the reason for that incarceration this court finds there was not justifiable cause for the failure to provide**

---

[3] Recently, the Supreme Court of Ohio articulated a three-step analysis for maintenance and support issues under R.C. 3107.07(A). Specifically, the Supreme Court state that "the court must first determine what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. Second, the court determines whether during that year the parent complied with his or her obligation under the law or judicial decree. Third, if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450, ¶ 15. The same burdens of proof and standards of review apply to steps two and three as stated in *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236.

**more than de minimis contact with the child for one year immediately preceding the filing of the petition * * *.**

(Doc. No. 17 at 2) (emphasis sic).

{¶24} Father relies upon *In re Schoeppner* to argue that the trial court improperly considered his incarceration in finding that his consent to the adoption is not required.  *See In re Schoeppner,* 46 Ohio St.2d 21 (1976).  It goes without saying that Ohio adoption law has changed significantly since *In re Schoeppner* addressed a prior version of the consent requirement and exceptions in 1976, which was less extensive than today and most of the provisions were contained in a single statute.[4]  Nevertheless, *In re Schoeppner* did not hold, as Father appears to contend, that a parent's incarceration prevented a trial court from finding that the consent was not required for an adoption. Rather, that Court concluded only that incarceration, in and of itself, did not remove the consent requirement: "[A]lthough the fact of imprisonment might, when combined with other factors, lend support to a finding of a willful failure to support * * * it will not constitute such failure as a matter of law." (Citations omitted.) *Id*. at 24.

*No Contact Provisions and Justifiable Cause*

{¶25} Here, the trial court relied on the reasoning recently set forth by the Eighth District to conclude that the orders prohibiting Father from having contact

---

[4] *In re Schoeppner* addressed a pre–1976 adoption petition in which the petitioners needed to prove that "one or both of the parents have willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition." *Id*. at 23; former R.C. 3107.06(B)(4).

-13-

with C.H.B. as a result of his convictions for child endangering against C.H.B. do not constitute justifiable cause under R.C. 3107.07(A).

{¶26} In *In re A.K.*, the father was convicted and sentenced to serve a prison term of twenty three years to life for murdering the children's mother. *In re A.K.*, et. al, 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165, ¶ 2. In October of 2006, the juvenile court issued a no contact order against the father. *Id.* Specifically, the order stated that "Father shall have no contact with the minor children absent an Order from this Court." *Id.* at ¶ 25. In February of 2007, the juvenile court granted permanent custody of the children to the children's maternal grandparents." *Id.* at ¶ 2. There was no order of child support in effect and the maternal grandparents did not request support. *Id.* at ¶ 8.

{¶27} In June of 2015, the maternal grandparents filed a petition to adopt the children asserting the father's consent was not required. *In re A.K.*, 2017-Ohio-9165, ¶ 3. The father objected to the petition arguing he had justifiable cause, pointing to the no contact order issued by the juvenile court. *Id.* at ¶ 5. The magistrate held hearings on the issue of the father's consent where the father established that he "has numerous letters and cards that he has written to the children that he gives to the paternal grandmother for safekeeping." *Id.* at ¶ 6. The father further "participates in a program that allows him to have Christmas gifts

anonymously sent to the children, has learned sign language because the children were learning it, and also learned to knit items for the children." *Id.* [5]

{¶28} The magistrate determined that the father's failure to communicate and to provide support were justified, requiring the father's consent to the adoption. *In re A.K.*, 2017-Ohio-9165, ¶ 10. The maternal grandparents filed objections, which were sustained by the trial court. *Id.* at 13. Specifically, the trial court concluded that " '[b]ut for [the father's] heinous actions, the children's mother would still be alive,' the father 'would not be in prison, and the children would not now be subject to these Adoption proceedings. He should not now be allowed to reap any legal benefit from the consequences of his crime.' " *Id.* at ¶ 27, citing the trial court's Journal Entry No. 1382500 (Dec. 4, 2016), at p. 7.

{¶29} On appeal, the Eighth District upheld the trial court's conclusion that the no contact order did not constitute justifiable cause under R.C. 3107.07(A). Specifically, the appellate court stated:

> **We wholly agree with the trial court's conclusion that 'public policy dictates that the very unique circumstances of this case not be disregarded.' '[U]nlike individuals who are in prison for crimes unrelated to their children,' 'it would be entirely unjust to allow [Respondent] to use his imprisonment' to justify the failure to contact and support where Respondent's 'own actions' 'necessitated his prison sentence in the first place.'**

---

[5] With regards to maintenance and support, the father admitted he was unable to provide support for the year prior to the petition due to his incarceration, but nevertheless he had established a guardianship estate for the children's support, which included the mother's life insurance, investments accounts, and proceeds from the sale of the house, the value of which was approximately $600,000 in July 2007. *In re A.K.* at ¶ 7.

*In re A.K.,* 2017-Ohio-9165, ¶ 29, citing the trial court's Journal Entry No. 1382500 (Dec. 4, 2016), at p. 13.[6]

{¶30} Other Ohio appellate districts have reached similar conclusions in cases involving these circumstances. *See e.g.*, *In re Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265 (where the father had raped his stepdaughter and the Ohio Department of Rehabilitation and Correction had ordered that the father not contact his daughter because his daughter lived with his stepdaughter, the victim, and the appellate court determined that the father had failed to have more than *de minimis* contact with his daughter, and that this failure was without justifiable cause); *Askew v. Taylor*, 5th Dist. Stark No.2004CA00184, 2004-Ohio-5504, ¶ 14-16 (finding that, although appellant had been incarcerated and was prohibited from having contact with his children pursuant to court order, he was incarcerated on two counts of felony child endangering as a result of injuring the children, and justice requires that the court not ignore the reason appellant was put into his current position; appellant's own violent acts caused the subsequent lack of contact, and that he created his own circumstances and should not be allowed to benefit from the consequences of this); *In re Adoption of Tucker*, 11th Dist. Trumbull No. 2000-T-0144, 2001-Ohio-8774 (finding, in the context of justifiable

---

[6] Notably, both the Supreme Court of Ohio and the Supreme Court of the United States declined further review the Eighth District's decision. *See In re A.K.*, 152 Ohio St.3d 1468, 2018-Ohio-1795; *Father v. Maternal Grandparents*, No. 19-6250, 2019 WL 6833457 (cert. denied Dec. 16, 2019).

cause under R.C. 3107.07(A), that a defendant cannot invoke the alleged involuntariness of a judicial no-contact order because the defendant's own willful misconduct underlying his conviction for sexually abusing that child created the need for that court order).

{¶31} While it is our belief that the foregoing decisions should probably be limited to their facts and applied on a case-by-case basis, here, it is undisputed by the parties that Father was convicted of two counts of felony child endangering with additional findings of serious physical harm against C.H.B. Thus, it was Father's voluntary and violent criminal conduct towards C.H.B. that resulted in the no contact order with C.H.B. Therefore, in this instance, even assuming *arguendo* that a no contact order had been in existence for the entire one-year statutory period, we conclude that the trial court's determination that the no contact order issued in the ancillary criminal case did not constitute justifiable cause under R.C. 3107.07(A) is supported by the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.

*2. Failure to Provide Maintenance and Support*

{¶32} On appeal, Father also contends that no support order had ever been issued by a court of competent jurisdiction regarding his support of C.H.B. Notably, the only evidence in the record regarding Father's support obligation for C.H.B. is the parties' stipulation that Father "was also not able to seek work or obtain

employment to pay support" while he was incarcerated and living at the CBCF. (Doc. No. 13).

{¶33} Recently, the Supreme Court of Ohio reviewed the various statutory provisions governing a natural parent's duty to support his or her child. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450. The majority in *B.I.* explained that:

> **R.C. 3103.03 sets forth a parent's obligation to support his or her children in the absence of a child-support order. "Under R.C. 3103.03, all parents, whether married or not, have a duty to support their minor children; it follows logically from this that all children have a right to be supported by their parents, regardless of the parents' marital status."** *In re Dissolution of Marriage of Lazor*, **59 Ohio St.3d 201, 202, 572 N.E.2d 66 (1991).** [7] **But this general statutory declaration does not end our inquiry; it is merely the beginning.**

> **\* \* \***

> **Ohio's statutory scheme regarding families and children makes clear that there are two statuses of parental obligation: first, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general obligation once the court issues its decree. When R.C. 3107.07(A) uses 'or' in the phrase 'by law or judicial decree,' it recognizes that a parent's obligation of support can have one of two possible statuses— general or specific. But a parent can have only one obligation status at a time. \* \* \* A parent is subject either to the general obligation or to a specific obligation and is evaluated accordingly.**

---

[7] R.C. 3103.03(A) also states that "[t]he biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor."

*B.I.* at ¶ 21, 27.

**{¶34}** In the case *sub judice*, Father relies on the rationale expressed in *In re Adoption J.A.B.* to support his stance that justifiable cause for failure to support under R.C. 3107.07(A) exists when the noncustodial parent was incarcerated, there was no existing child-support order, and the child's legal custodian had not expressed an interest in receiving financial assistance. *See In re Adoption J.A.B.*, 11th Dist. Trumbull No. 2013-T-0114, 2014-Ohio-1375, ¶ 45-46.

**{¶35}** However, in light of the Supreme Court's holding in *B.I*, the Eleventh District has since acknowledged its reasoning in *In re Adoption J.A.B.* does not consider a parent's general obligation to provide child support under R.C. 3103.03(A). *See Matter of Adoption of A.L.R.*, 11th Dist. Geauga No. 2019-G-0210, 2019-Ohio-4320, ¶ 13 (stating "[g]iven the emphasis *B.I.* places on that statute for its conclusion that a natural parent has a duty to provide support even in the absence of a support order, J.A.B. is not controlling"). Rather, the Eleventh District recognized that in the absence of a child support order, a natural parent has an independent obligation to provide support for his child regardless of whether a request for support is made. *See Matter of Adoption of A.L.R.*, 11th Dist. Geauga No. 2019-G-0210, 2019-Ohio-4320, ¶ 12.

**{¶36}** Here, we are not persuaded by Father's argument that his incarceration and the absence of a support order obviated his independent obligation

to provide support for C.H.B.[8]  Therefore, we conclude the trial court's determination that Father had failed without justifiable cause to provide maintenance and support for C.H.B. is supported by the manifest weight of the evidence.  Accordingly, the first assignment of error is overruled.

*Third Assignment of Error*

{¶37} In his third assignment of error, Father argues that the trial court improperly considered the facts of his underlying convictions for child endangering against C.H.B. in determining that his consent is not required to the adoption. Initially, we note that Father has pointed us to no authority that would prevent the trial court from considering such circumstances.  To the contrary, at least one appellate district has stated that "[i]t would be a grave injustice for the court to be unable to consider the underlying circumstances of appellant's situation and the reasons for his incarceration in making a justifiable cause determination under R.C. 3107.07." *In re the Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP–589, 2017-Ohio-265, ¶ 19.  This notwithstanding, the record fails to demonstrate that the trial court relied upon anything other than the facts stipulated to by the parties regarding Father's convictions and sentence, which as noted earlier incorporated by reference and attached the judgment entry of conviction specifying the crimes that Father was

---

[8] We emphasize that the record in this case does not establish the existence of *any* support order.  We acknowledge that this might be distinguishable from a situation where an order of zero support has been entered in a case and we make no finding or determination as to that circumstance in this decision.

found guilty of, including the additional findings of serious physical harm inflicted upon C.H.B. Accordingly, we find no merit to his contention on appeal and we overrule the third assignment of error.

{¶38} For all these reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and ZIMMERMAN, J.J., concur.**

**/jlr**