[Cite as *In re Adoption of J.S.*, 2022-Ohio-1659.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Patricia A. Delaney, J. |
| IN RE ADOPTION OF J.S. | : |  |
|  | : | Case No. 2021CA00109 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Probate Division, Case No. 239194 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | May 17, 2022 |

APPEARANCES:

For Appellees:

KRISTEN DONOHUE GUARDADO
4600 Beverly Ave. NE
Canton, OH 44714

For Mother-Appellant:

ROBERT G. ABNEY
ABNEY LAW OFFICE, LLC
116 Cleveland Ave. NW
Suite 500
Canton, OH 44702

*Delaney, J.*

{¶1} Mother-Appellant R.M. appeals the September 17, 2021 judgment entry of the Stark County Court of Common Pleas, Probate Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother-Appellant R.M. is the biological parent of S.S. (dob April 2010), J.S. (dob November 2016), and P.E.S. (dob September 2018). The three children have different biological fathers and Mother was not married to any of the biological fathers. The fathers of the children have not entered an appearance in the proceedings.

### Juvenile Court Proceedings

{¶3} On March 5, 2018, Stark County Department of Job and Family Services ("SCDJFS") filed complaints in the Stark County Court of Common Pleas, Juvenile Division, alleging S.S. and J.S. were abused, neglected or dependent children due to Mother's illegal drug use and association with the fathers of the children who engaged in drug use and criminal activity. Mother had a prior history with SCDJFS due to her drug use and in approximately 2014, her eldest child (not involved with this case) was placed in the legal custody of the father of the child.

{¶4} On August 27, 2018, in Case No. 2018JCV00945, SCDJFS and the Stark County Child Enforcement Agency filed a complaint for child support orders against Mother for the support of S.S. and J.S.

{¶5} On August 29, 2018, the Juvenile Court found J.S. and S.S. to be dependent and placed the children in the temporary custody of SCDJFS. SCDJFS placed the children in the care of E.S., the paternal great-aunt of S.S. Paternal-Great Aunt had a relationship with Mother because she had provided babysitting services to Mother since

S.S. was four years old. Paternal-Great Aunt is the mother of T.S., Adoptive Mother-Appellee. Adoptive Mother is related to the biological father of J.S. Adoptive Father-Appellee, W.S. is married to Adoptive Mother.

{¶6} On September 17, 2018, SCDJFS filed a complaint for dependency for P.E.S. SCDJFS requested the Juvenile Court declare P.E.S. dependent based on the dependency allegations for his siblings, S.S. and J.S. On September 18, 2018, P.E.S. was placed in the temporary custody of SCDJFS.

{¶7} The Juvenile Court set a hearing on the complaint for child support to be held on November 1, 2018. Mother was served with the complaint and notice of hearing by ordinary mail. On November 5, 2018, the Juvenile Court dismissed the complaint for child support orders without prejudice. The order did not explain the reason for the dismissal of the complaint for child support.

{¶8} On November 30, 2018, SCDJFS moved to change legal custody of S.S. and J.S. to Adoptive Mother and Father. SCDJFS argued that Mother was no longer engaged in her case plan services and had not visited the children since October 2018. The GAL recommended the change of legal custody to the Adoptive Mother and Father.

{¶9} The Juvenile Court issued its judgment entry on March 11, 2019 granting legal custody of S.S. to Adoptive Mother and Father. The judgment entry also granted legal custody of J.S. to Adoptive Parents as relating to Mother's interests only. In the judgment entry, the Juvenile Court stated that, "Mother shall have visitation as the parties agree." On April 23, 2019, the Juvenile Court granted legal custody of J.S. to Adoptive Parents as to the biological father's interests.

{¶10} On December 13, 2018, the Juvenile Court declared P.E.S. a dependent child pursuant to the stipulation of Mother and biological father. SCDJFS had placed P.E.S. in the care of Adoptive Parents.

{¶11} On May 19, 2019, SCDJFS moved to change legal custody of P.E.S. to Adoptive Parents. A hearing was held on the motion on August 22, 2019, but Mother did not appear. By judgment entry issued on August 23, 2019, the Juvenile Court granted legal custody of P.E.S. to Adoptive Parents. The entry stated that per her attorney, Mother was willing to stipulate to legal custody. As to visitation, the Juvenile Court ordered that, "parenting time for Mother and Father shall occur at the discretion of the legal custodians."

## Petitions for Adoption

{¶12} Adoptive Parents filed Petitions for Adoption with the Stark County Probate Court on February 26, 2021. The petitions alleged that Mother's consent to adopt the children was not required because Mother failed without justifiable cause to either provide more than de minimus contact or maintenance and support of the children as required by law or judicial decree for the period of at least one year immediately preceding the filing of the Petitions.

{¶13} Mother filed timely objections to the Petitions for Adoption. Based on Mother's objections, the Probate Court set the matter for an evidentiary hearing on the issue of Mother's consent. A video evidentiary hearing was held on August 16, 2021.

## Contact

{¶14} Paternal Great-Aunt had the original placement of S.S. and J.S. in 2018. Mother would visit the children at Paternal Great-Aunt's home when they resided with her. The children were placed with Adoptive Parents in 2019 and after 2020, Paternal Great-

Aunt did not have contact with Mother; however, Paternal Great-Aunt admitted that she would not answer the phone if she did not recognize the phone number. Mother had several phone numbers, of which Paternal Great-Aunt was not familiar with. Paternal Great-Aunt did not hear from Mother directly until March 2021 when Mother called her to state she wanted visitation rights with the children.

{¶15} Adoptive Father testified that he, Adoptive Mother, and the children had lived in the same home in Dalton, Ohio for four years. He assumed Mother knew where they lived because Maternal Grandmother had visited the children at his home. While there was photographic evidence that Mother saw S.S. in May 2019, Father stated the children last saw Mother on Easter, April 21, 2019. There was no dispute that Mother had not seen the children in person from February 26, 2020 to February 26, 2021.

{¶16} Adoptive Parents testified that Mother did not contact them to schedule visitation with the children. Father stated he received a voice mail from Mother in March 2021, but the evidence showed that Father texted Mother on February 18, 2021, acknowledging he had received her voice mail and would set up a time to talk to her. Adoptive Mother testified that her cell phone was broken and could not receive text messages or phone calls starting in July or August 2020. Before her cell phone malfunctioned, she would receive calls and texts from Mother, but Adoptive Mother did not directly inform Mother that her cell phone had broken, nor did Mother obtain a functioning cell phone. Adoptive Mother told Maternal Grandmother her cell phone was broken, and Adoptive Mother assumed she would tell Mother, which she did. Maternal Grandmother would not give Mother the cell phone number for Adoptive Father until

months later because Adoptive Parents did not want to provide their contact information without their permission.

{¶17} Mother presented evidence disputing that she did not contact Adoptive Parents for visitation. Her phone records from February 26, 2020 to February 26, 2021 were presented as exhibits and showed that Mother had texted and called Adoptive Parents multiple times. Mother stated she had spoken to the children eight times. She did not demand visitation with the children because she was afraid Adoptive Parents would cut off all contact with the children. Maternal Grandmother testified that Mother had spoken with S.S. at least twice while S.S. was with her. Adoptive Parents began limiting Maternal Grandmother's time with the children, while Maternal Grandmother attempted to contact Adoptive Parents over 200 times from February 26, 2020 to February 26, 2021.

{¶18} On February 17, 2021, Mother attempted to file a complaint for parentage in the Stark County Court of Common Pleas to gain visitation with the children. The court did not accept the matter because the children resided in Wayne County. Mother testified that she filed the action in Wayne County on March 18, 2021.

{¶19} The great grandmother of J.S. and biological father of P.E.S. testified they also had difficulty contacting Adoptive Parents to obtain visitation of the children. They were able to contact the Adoptive Parents, but they never received a response to their request for visitation.

### Maintenance and Support

{¶20} Adoptive Father testified that Mother did not provide the children with any maintenance or support from February 26, 2020 to February 26, 2021. She did not send any cards, gifts, or clothing to the children. The only gifts and cards the children received

were from Maternal Grandmother. Maternal Grandmother signed the cards to the children with her name and did not include Mother's name.

{¶21} Mother testified that a complaint for child support for S.S. and J.S. was dismissed without prejudice but provided no explanation for the dismissal. Mother was the subject of a child support order for her eldest child. She testified because the Adoptive Parents would not communicate with her, she could not provide the children with support. She said she gave money to Maternal Grandmother to provide gifts, cards, and clothes for the children, which Maternal Grandmother confirmed, but Maternal Grandmother did not indicate to the children that the gifts were from Mother.

### Judgment Entry

{¶22} On September 17, 2021, the Probate Court filed its judgment entry finding that Mother's consent was not required to proceed with the children's adoption. The court applied the required analysis under R.C. 3107.07(A) to first find Adoptive Parents did not meet their burden of proof to show that Mother failed without justifiable cause to provide more than de minimus contact with the children. The evidence at the hearing demonstrated that Mother attempted to request contact with the children, but her attempts were thwarted by Adoptive Parents' lack of response. Multiple witnesses testified to their difficulty in contacting Adoptive Parents to visit the children. The court found Adoptive Parents purposefully prevented Mother from contacting the children, thereby establishing she had justifiable cause for failing to provide more than de minimus contact.

{¶23} As to the second consideration under R.C. 3107.07(A), the Probate Court determined that Adoptive Parents proved by clear and convincing evidence that Mother failed to provide for the maintenance or support of the children required by law or judicial

decree for a period of one year immediately preceding the filing of the petition. The court found that Mother was not subject to any judicial decree imposing a specific support obligation, as the complaint for child support was dismissed before the Juvenile Court determined support. Because there no support order, the Probate Court determined Mother was required to support the children pursuant to the general duty of support under R.C. 3103.03. The evidence in the case did not support Mother's allegations she purchased gifts, cards, and clothing for the children.

{¶24} Pursuant to R.C. 3107.07(A), the Probate Court determined Adoptive Parents established that Mother's consent was not required for the petitions for adoption to proceed.

{¶25} It is from this judgment that Mother now appeals.

## ASSIGNMENT OF ERROR

{¶26} Mother raises one Assignment of Error:

{¶27} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT FAILED, WITHOUT JUSTIFIABLE CAUSE, TO PROVIDE SUPPORT OR MAINTENANCE FOR THE MINOR CHILDREN."

## ANALYSIS

{¶28} On appeal, Mother argues the Probate Court erred in finding that her consent to the adoption was not required. Specifically, she argues in her sole Assignment of Error that she had justifiable cause for failing to provide maintenance and support for the children during the one-year look-back period of R.C. 3107.07(A).

### Legal Standard under R.C. 3107.07(A)

{¶29} The right of a natural parent to the care and custody of his or her children is one of the most fundamental in law. This fundamental liberty interest of natural parents in the care, custody and management of their children is not easily extinguished. *In re Adoption of B.T.R.*, 5th Dist. Morrow No. 2019 CA 0005, 2020-Ohio-2685, 2020 WL 3545743, ¶ 18 citing *Santosky v. Kramer*, 455 U.S. 745, 753–754 (182). Adoption permanently terminates the parental rights of the natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 55 (10th Dist. 1989); R.C. 3107.15(A)(1). Therefore, "[b]ecause adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exception exists." *In re Adoption of C.H.B.*, 3rd Dist. Crawford No. 3-19-18, 2020-Ohio-979, ¶ 18 citing *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5.

{¶30} One such statutory exception to the requirement of parental consent is found in R.C. 3107.07(A), which provides:

Consent to adoption is not required of any of the following:

(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶31} "R.C. 3107.07(A) is written in the disjunctive." *In re Adoption of C.H.B.*, 2020-Ohio-979, ¶ 19 quoting *In re Adoption of H.R.*, 3rd Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 23. "Therefore, a failure without justifiable cause to provide *either* more than *de minimus* contact with the minor or maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *Id.*

{¶32} The Ohio Supreme Court previously formulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A) to determine if parental consent is required. *In re Adoption of C.H.B.*, 2020-Ohio-979, ¶ 20; *In re Adoption of O.J.B.*, 12th Dist. Warren No. CA2020-01-004, 2020-Ohio-4184, ¶ 9; *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23.

{¶33} In the first step, the probate court must determine whether the petitioner has proven, by clear and convincing evidence, that the natural parent has failed to have more than de minimus contact with the child or failed to provide for the maintenance and support of the child. *In re Adoption of M.B.*, at ¶ 23. In *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), the Ohio Supreme Court explained that clear and convincing evidence is more than a preponderance of the evidence but does not rise to the level of beyond a reasonable doubt as required in criminal cases. It must produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. *Cross*, syllabus by the court, paragraph three. *In re Adoption of B.T.R.*, 5th Dist. Morrow No. 2019 CA 0005, 2020-Ohio-2685, 2020 WL 3545743, ¶ 21. "A trial court has discretion to make these determinations and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." *In re Adoption of M.B.* at ¶ 25. To find an abuse of that discretion, we must

determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶34} If the probate court finds the parent failed to contact or provide support to the children, the court proceeds to the second step of the analysis to determine whether the parent had justifiable cause for the failure to contact or provide support. The petitioner must prove by clear and convincing evidence that the failure was without justifiable cause. *In re Adoption of C.H.B.*, 2020-Ohio-979, ¶ 22 citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236. In the second step, a probate court's determination as to "justifiable cause" under R.C. 3107.07(A) will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. *In re Adoption of B.T.R.*, 5th Dist. Morrow No. 2019 CA 0005, 2020-Ohio-2685, 2020 WL 3545743, ¶ 24 citing *In Re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus. The probate court, as the trier of fact here, determines the weight and credibility of the evidence. *Seasons Coal Company, Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993). Our role is to examine the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of O.J.B.*, 12th Dist. Warren No. CA2020-01-004, 2020-Ohio-4184, ¶ 12 citing *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 14.

**Legal Standard for the Determination of Maintenance and Support**

{¶35} The only issue before this Court is whether the Probate Court erred in finding that Mother failed to provide maintenance and support for her children and her failure was without justifiable cause. While it is well-settled that probate courts are required to use the two-step analysis to determine issues under R.C. 3107.07(A), in 2019, the Ohio Supreme Court developed a three-step analysis for maintenance and support issues under R.C. 3107.07(A). In *In re Adoption of B.I.,* 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 14, the Supreme Court examined a case to determine whether the parent had "failed without justifiable cause * * * to provide for the maintenance and support of the minor as required by law or judicial decree" under R.C. 3107.07(A). *In re Adoption of B.I.,* 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 14. In doing so, the Court articulated the following analytical process:

> To determine whether a parent has failed to provide child support as required by law or judicial decree involves a three-step analysis. The court must first determine what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. Second, the court determine whether during that year the parent complied with his or her obligation under the law or judicial decree. Third, if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure.

*Id.* at ¶ 15. The Probate Court utilized the analytical structure of *In re Adoption of B.I.* to find Mother did not provide maintenance or support as required by law or judicial decree and there was no evidence she had justifiable cause for her failure of support.

### First Step: Law or Judicial Decree

{¶36} The first step in the analysis is to determine what the law or judicial decree required of the parent for the year prior to the filing of the petition. *In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 16. The Supreme Court outlined that under Ohio's statutory scheme regarding families and children, there are two statutes regarding the parental obligation to support their children: (1) a general obligation of parents to support their children imposed by R.C. 3103.03(A), which states "[t]he biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor"; and (2) a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119. *Id.* at ¶ 27. The specific child-support obligation supersedes the general obligation once a trial court issues its decree because a parent can have only one obligation status at a time. *Id.* {¶37} The Ohio Supreme Court qualified different child support orders in *In re Adoption of B.I.* The father in that case had been ordered to pay child support but the trial court issued a judgment entry terminating his child support obligation and reduce his arrearages to zero at the request of the mother. The Supreme Court defined the judgment terminating the child support obligation as a "no-support order," which they held to include "orders terminating previously ordered support, zero-support orders, and orders modifying a previously ordered support amount to zero." *Id.* at ¶ 16 fn. 1. The Court found that where a judicial decree imposes a no-support order, it supersedes a parent's general

statutory obligation to support the child and may be relied upon by the parent in a subsequent adoption action. *Id.* at ¶ 30. As such, a "parent's nonsupport of his or her minor child pursuant to a judicial decree does not extinguish the requirement of that parent's consent to the adoption of the child." *Id.* at ¶ 1; *In re Adoption of O.J.B.*, 2020-Ohio-4184, ¶ 17.

{¶38} In this case, evidence was presented at trial that on August 27, 2018, in Case No. 2018JCV00945, SCDJFS and the Stark County Child Enforcement Agency filed a complaint for child support orders against Mother for the support of S.S. and J.S. The Juvenile Court set a hearing on the complaint for child support to be held on November 1, 2018. Mother was served with the complaint and notice of hearing by ordinary mail. On November 5, 2018, the Juvenile Court dismissed the complaint for child support orders without prejudice. The order did not explain the reason for the dismissal of the complaint for child support.

{¶39} Mother contends the Juvenile Court's dismissal of the complaint for child support was a judicial decree equivalent to a zero-support order. Because Mother's alleged nonsupport of the minor children was pursuant to the Juvenile Court's zero-support order, the requirement that her consent is necessary for the adoption of the children was not extinguished pursuant to the law of *In re Adoption of B.I.*

{¶40} The November 5, 2018 judgment entry dismissing the complaint for child support does not fall within the Supreme Court's definition of a no-support order, which includes "orders terminating previously ordered support, zero-support orders, and orders modifying a previously ordered support amount to zero." In this case, the evidence does not support an extension of the Supreme Court's definition of a "no-support order" as

established in *In re Adoption of B.I.* to include the Juvenile Court's dismissal of the complaint for child support. There was no evidence presented that Mother was under a previously issued order to provide child support to these children. The Juvenile Court dismissed the complaint for child support before the court took any evidence or made any decision as to Mother's child support obligation. The dismissal entry did not impose or modify any obligation on Mother, either at a zero amount or other amount. Finally, the complaint for child support was dismissed without prejudice. "A dismissal without prejudice is not a final determination of the rights of the parties and does not constitute a judgment or final order when refiling or amending of the complaint is possible." *McIntosh v. Slick*, 5th Dist. Stark No. 2001CA00268, 2002-Ohio-3599, 2002 WL 1485120, ¶ 9 citing *Central Mut. Ins. Co. v. Bradford-White Co.*, 35 Ohio App.3d 26, 28, 519 N.E.2d 422 (6th Dist.1987); *See, also, Chambers v. LTV Steel Co.* (Sept. 23, 1996), 5th Dist. No. 95-CA-0302.

{¶41} As described by *In re Adoption of B.I.*, this is an instance of there being no support order in place. *Id.* at ¶ 31. Mother was not subject to a specific obligation imposed by judicial decree; therefore, the first step in the analysis is complete with the conclusion that Mother was subject to the general obligation of parents to support their children as imposed by law in R.C. 3103.03.

**Second Step: Compliance**

{¶42} The Probate Court moved to the second step in the analysis to determine whether during the year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner, the parent complied with her

obligation under the law. The court found that there was no evidence that Mother complied with her general obligation to provide support for her children.

{¶43} Mother alleged at the hearing that she purchased gifts, cards, and clothing for the children, which she gave to Maternal Grandmother to give to the children. Mother testified:

Q: * * * Have you given them any support of the children?

A: No, just clothes and gifts through my mother.

Q: Okay. And if those gifts were given from your mother on holidays, they had been from her and not from you. Are you aware of that?

A: No, they were from me as well. She was, um, afraid to step on their toes and let them know that it was from me and her because she didn't want them to cut-off communication from her and the kids.

(T. 108).

{¶44} Maternal Grandmother testified that she provided those gifts to the children. She stated:

"[Mother] would help me, and I just didn't mention it. She would help with clothing, and she would help with money when she started working and stuff for the gifts and the occasions I went over. I didn't really say this is from [Mother] because they didn't even acknowledge her, and I didn't feel it would be received very well, so. I tried one time. I took a gift for [P.E.S.]'s birthday party and said this is from [Mother] and they didn't even say any word. Not one word, oh, thank you or tell her thanks, or anything. They just

set it aside. And when I left it wasn't opened yet. So I don't know what ever happened to it.

(T. 137). Maternal Grandmother testified the birthday party was in September 2020. (T. 137).

{¶45} Adoptive Father testified that Mother had not provided any support to the children from February 26, 2020 to February 26, 2021. (T. 9-10). The only gifts the children received were from Maternal Grandmother because the cards attached to the gifts stated they were from Maternal Grandmother. (T. 10). Adoptive Mother testified she was unaware of any support from Mother:

Q. Have you received any, um, any gifts or any monetary money from [Mother] for the children?

A. No. No.

Q. Okay. And I think your husband had testified that her mom has brought over some gifts?

A. Correct.

Q. And that you've kept the cards to those?

A. Yes.

Q. And when he says what do you do with those cards?

A. I keep them. I like to scrapbook. I have scrapbooks started, um, for each child and I continue to add to 'em as, you know, as I have time. And I keep all the gift, you know, cards that people give 'em on a birthday or Christmas.

Q. Okay. And like what do the cards say, or are they just like a tag or what do they say?

A. Oh no, not a tag. They're cards. Um, [Maternal Grandmother] would buy, you know, really nice cards whether it be birthday card, Christmas card. And they clearly state at the bottom love grandma [Maternal Grandmother].

Q. Okay. And you have kept all those so that the kids have those?

A. Yes.

(T. 36-37). Adoptive Mother's scrapbooks containing the cards were not presented as evidence.

{¶46} Presented with this evidence, the Probate Court found that while Mother and Maternal Grandmother both testified Maternal Grandmother gave the children gifts using Mother's funds, there was no evidence presented in the form of receipts to support Mother's contention that she had purchased the gifts. A similar factual situation was presented in *In re Adoption of B.G.F.*, 2018-Ohio-5063, 126 N.E.3d 348 (3rd Dist.). In that case, the natural father claimed his consent was necessary for the adoption of his child because natural father had provided maintenance and support for the child. Natural father claimed he had paid for a swing-set and two $50.00 cashier's checks given to the child by paternal grandmother. *Id.* at ¶ 34. "Mother stated that the gifts were always clearly from Paternal Grandmother and not from Father. For instance, Mother testified that the order form with the swing set given to B.G.F. indicated that Paternal Grandmother was the purchaser." *Id.* at ¶ 33. "Father claimed he did not attempt to make Mother aware that the gifts were from him because he knew that Step-Father did not like him and was afraid it would jeopardize Paternal Grandmother's access to B.G.F. * * * Paternal Grandmother provided testimony supporting Father's stance that he paid for most of the gifts she brought to B.G.F. when she visited him." *Id.* at ¶ 34.

{¶47} The probate court found the two cashier's checks were de minimus monetary gifts that did not qualify as maintenance or support. *Id.* at ¶ 36. The Third District Court of Appeals further found that, "even though father claimed that he paid for the majority of the gifts given to B.G.F. by Paternal Grandmother, the trial court was free to believe Mother's testimony that the gifts were in fact from Paternal Grandmother." *Id.* at ¶ 41. "A probate judge has discretion to determine whether the biological parent provided support as contemplated by R.C. 3107.07(A) 'and his or her judgment should not be tampered with absent an abuse of discretion.'" *Id.* quoting *In re Adoption of M.B.* at 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21, citing *In re Adoption of Bovett*, 33 Ohio St.3d at 107, 515 N.E.2d 919 (1987); *see also In re Adoption of Charles B.*, 50 Ohio St.3d 88, 552 N.E.2d 884 (1990), paragraph three of the syllabus ("adoption matters must be decided on a case-by-case basis through the able exercise of discretion by the trial court").

{¶48} Under our abuse of discretion analysis as to whether Adoptive Parents demonstrated by clear and convincing evidence that Mother failed to provide maintenance and support to the children, we find the evidence supports the Probate Court's determination that Mother did not provide maintenance and support to the children. The trial court was free to believe the testimony of Adoptive Parents that the gifts to the children were in fact from Maternal Grandmother.

### Third Step: Justifiable Cause

{¶49} The third step in the analysis requires the probate court to consider if the parent did not comply with her obligation under the law, was there justifiable cause for that failure. The Probate Court found Adoptive Parents established that Mother did not

have justifiable cause for her failure to provide maintenance and support under her general obligation.

{¶50} In support of her claim there was justifiable cause, Mother returns to the dismissal of the complaint for child support. Mother asserts Adoptive Parents are responsible for the dismissal of the complaint for child support. Maternal Grandmother testified at the hearing as to the dismissed complaint for child support. She stated she witnessed a conversation between Adoptive Parents, shortly after Adoptive Parents stepped in to take custody of the children:

[t]hey, uh, were discussing that they were dismissing the child support order, and um, that they didn't want child support. [Mother] didn't have a job at the time, and they weren't going to ask for child support. And it's clear to me that, um, it's clear to me why they didn't want child support because that would be a tie to [Mother], and it would make her look responsible because they did not want it.

(T. 138).

{¶51} First, there is nothing in the record to support Maternal Grandmother's testimony that the Adoptive Parents were the reason the Juvenile Court dismissed the complaint for child support. The complaint for child support was brought by SCDJFS and the Stark County Child Enforcement Agency. The judgment entry dismissing the complaint did not explain the basis for the dismissal. Maternal Grandmother testified Adoptive Parents said "they" were dismissing the complaint for child support, and "they" did not want child support. Adoptive Parents could have been speaking of two different entities. Because SCDJFS and the Stark County Child Enforcement Agency filed the

complaint for child support, Adoptive Parents could have been referring to "they" as those agencies dismissing the complaint while also stating that "they" as Adoptive Parents did not want child support. It is the purview of the Probate Court to determine the credibility of the witnesses and the weight of the evidence.

{¶52} Second, in the absence of a child support order, a natural parent has an independent obligation to provide support for her child regardless of whether a request for support is made. *In re Adoption of C.H.B.*, 2020-Ohio-979, ¶ 35 citing *Matter of Adoption of A.L.R.*, 11th Dist. Geauga No. 2019-G-0210, 2019-Ohio-4320, ¶ 12. The dismissal of the complaint for child support did not obviate Mother's independent obligation to provide support for the children.

{¶53} Mother next contends she had justifiable cause for her failure to support because she never had the opportunity to provide support for the children due to the behavior of Adoptive Parents. As the Probate Court determined on the issue of contact with the children, there is no dispute on appeal that Adoptive Parents denied Mother contact and communication with both them and the children. While the issue of contact is relevant, a close reading of R.C. 3107.07(A) shows that it requires Mother to *provide* maintenance support for her children, but it does not require that the maintenance and support be *accepted*. It is upon this distinction that Mother's arguments did not succeed before the Probate Court.

{¶54} Mother testified that she did not provide direct maintenance and support to the children because she could not make arrangements with Adoptive Parents due to their lack of communication. (T. 102). Mother was asked if she had ever mailed a check to Adoptive Parents or Paternal Great-Aunt for the maintenance and support of the

children. (T. 110). Mother said she had not mailed them a check because she did not know where Adoptive Parents were residing. (T. 110). She did not mail a check to Paternal Great-Aunt because she did not know if she was home due to medical reasons. (T. 110). The evidence shows that Maternal Grandmother knew the addresses of Paternal Great-Aunt and Adoptive Parents because she visited with the children, but she did not share the address with Mother because she felt it was irrelevant due to Adoptive Parents' lack of communication with Mother. (T. 127). Mother and Maternal Grandmother reside together. (T. 125). When Mother filed for visitation with the children in February 2021, she used Adoptive Parents' address. (T. 113). Mother testified that Maternal Grandmother gave her the address. (T. 113).

{¶55} The question of justifiable cause is a determination for the Probate Court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. While we review the entire record to determine there was a manifest miscarriage of justice, we note the Probate Court is in the best position to determine the credibility of the witnesses. In this case, most of the evidence as to whether Mother had justifiable cause for her failure to provide support is based on the testimony of the witnesses. The Probate Court did not find the testimony of Mother and Maternal Grandmother to be credible that even though Maternal Grandmother had Adoptive Parents' address, Mother had justifiable cause for not providing maintenance and support because Adoptive Parents would not communicate with her to accept the support. We compare the court's finding as to support with its determination that Mother had justifiable cause for her failure to contact the children based on Adoptive Parents' lack of communication. The Probate Court's differing conclusions of law demonstrate the court

considered the evidence to discern that Adoptive Parents failed to meet their burden as to justifiable cause for contact but met their burden to show no justifiable cause for Mother's lack of maintenance and support.

{¶56} Having reviewed the matter under the three-step analysis as established in *In re Adoption of B.I.*, we find the Probate Court did not abuse its discretion when it found Mother's consent was not required. We overrule Mother's sole Assignment of Error.

## CONCLUSION

{¶57} The judgment of the Stark County Court of Common Pleas, Probate Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.